R. Joseph Barton (SBN 212340)
Block & Leviton LLP
1633 Connecticut Ave, N.W., Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockleviton.com

*Counsel for Plaintiff Brandon Imber*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| BRANDON IMBER, individually and on behalf of all others similarly situated, <br>     *Plaintiff*, <br><br> v. <br><br> BRUCE LACKEY, PAM LACKEY, LACKEY FAMILY TRUST, COLE SCHARTON, the ADMINISTRATIVE COMMITTEE OF THE PEOPLE BUSINESS EMPLOYEE STOCK OWNERSHIP PLAN, MIGUEL PAREDES, RICK ROUSH, DEL THACKER, RICHARD DEYOUNG, and RITCHIE TRUCKING SERVICE HOLDINGS, INC., <br>     *Defendants*, <br><br> and <br><br> PEOPLE BUSINESS EMPLOYEE STOCK OWNERSHIP PLAN, <br>     *Nominal Defendant* | Case No.:_____ <br><br> **COMPLAINT FOR VIOLATIONS OF ERISA** <br><br> **CLASS ACTION** |

CLASS ACTION COMPLAINT

# I.    INTRODUCTION

1.    This action is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, on behalf of a class of participants in and beneficiaries of a retirement plan known as the People Business Employee Stock Ownership Plan (the "ESOP" or "Plan") to restore losses to the Plan and to remedy Defendants' breaches of fiduciary duties and other violations of ERISA arising out of a transaction on December 31, 2018. In this transaction, Defendant Lackey Family Trust sold 2,000,000 shares of common stock of Ritchie Trucking Service Holdings, Inc. ("Ritchie Holdings" or the "Company")[1] to the ESOP for $19,573,000 (the "2018 Transaction").

2.    The 2018 Transaction was not designed to be in the best interests of the ESOP participants and caused the ESOP to pay more than fair market value. Before the 2018 Transaction, Ritchie Trucking's largest client announced that it would and ultimately did make significant changes that would decrease Ritchie Trucking's market share and revenue. Evidencing that the price in the 2018 Transaction did not reflect fair market value, after these changes were announced but before the changes were implemented, the then-owners of Ritchie Holdings offered to sell the company for $10-12 million. The company executives who were also fiduciaries of the ESOP did not provide this information to the ESOP's advisors or provided incomplete information. Had the Trustee performed a prudent investigation and sufficient due diligence, such material information should have been discovered. As a result of these breaches of fiduciary duty by all the Plan fiduciaries, this material information was not considered in valuing Ritchie Holdings for purposes of the 2018 Transaction and was not properly included in the 2018 Transaction price.

---

[1] Ritchie Holdings, together with its subsidiaries and predecessors operate and have operated under the name "Ritchie Trucking Service." In this Complaint, "Ritchie Holdings" refers Ritchie Trucking Service Holdings, Inc. while "Ritchie Trucking" refers generally to Ritchie Holdings, its subsidiaries, and/or its predecessors.

CLASS ACTION COMPLAINT                                                                 2

3.      In addition, this action alleges that the Administrator of the ESOP failed to provide proper disclosures required by ERISA in response to a written request by Plaintiff before filing this lawsuit. Specifically, Plaintiff requested a copy of the valuation report that was used to set the price at which the ESOP paid for the shares and the valuation report that determined the value of his benefits. The Plan Administrator refused to provide copies of those reports (and also failed to provide a copy of the trust agreement despite two requests).

4.      Through this action, Plaintiff seeks to enforce his rights and those of other participants in the Plan under ERISA, to recover the losses incurred by the Plan because of Defendants' breaches of fiduciary duty and other ERISA violations and to ensure that the Plan and its assets are properly administered. Among the relief sought for these breaches and violations, Plaintiff requests that the Court order the breaching fiduciaries to pay the losses to the Plan, to disgorge any profits, that the Court order other remedial and equitable relief and that any monies recovered for the Plan be allocated to the accounts of the Class.

## II.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

6.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District, and at least one of the Defendants may be found in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and one or more of the Defendants reside in this District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   PARTIES

**Plaintiff**

7.    Plaintiff Brandon Imber is a former employee of Ritchie Trucking. Brandon Imber was initially hired by Bruce Logistics, a subsidiary of Ritchie Trucking Service, Inc. Plaintiff was promoted to the position of general manager of Ritchie Trucking Service, Inc. on January 1, 2012. He remained employed by Ritchie Trucking until October 31, 2020. At the time that Mr. Imber's employment at Ritchie Trucking ended, his position was general manager. As a result of his employment, Plaintiff Imber became a vested participant in the ESOP. He continues to be a participant of the ESOP, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), because he has a colorable claim for additional benefits under the Plan. Additionally, had the ESOP purchased the Ritchie Trucking shares at Fair Market Value, Plaintiff's shares would have been worth more than $5,000 and he would still have an account in the ESOP. Plaintiff Imber resides in Clovis, California.

**Defendants**

*Committee Defendants*

8.    Defendant Administrative Committee of the People Business Employee Stock Ownership Plan (the "Committee") is identified as the plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C § 1002(16)(A) in the written instrument of the Plan and also in the 2018 Summary Plan Description ("SPD"). Section 13.01 of the written instrument of the Plan identifies the Committee as one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The Committee meets the definition of a person within the meaning of ERISA § 3(9), 29 U.S.C. § 1002(9) because ERISA defines the term person broadly and because a committee meets the definition of an association or an unincorporated organization. The Committee's address is identified in the 2018 SPD as P.O. Box 1186 Fresno CA 93715.

9.      Defendant Bruce Lackey was from at least June 1975 through at least until the 2018 Transaction the President and/or Chief Executive Officer of Ritchie Holdings. Bruce Lackey is and has been a member of the Board of Directors of Ritchie Holdings since at least the time of the 2018 Transaction. Bruce Lackey is and has been a member of the Committee since the formation of the ESOP in January 2018. Bruce Lackey is also the husband of Defendant Pamela Lackey. By virtue of his membership on the Ritchie Holdings board of directors and his membership on the Committee, Bruce Lackey is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of 2018 Transaction. As a result, Bruce Lackey was a "party in interest" with respect to the ESOP as defined in ERISA § 3(14)(A), (E), (F), (H) & (I), 29 U.S.C. § 1002(14) (A), (E), (F), (H) & (I), at the time of the 2018 Transaction.

10.     Defendant Pamela Lackey was at least prior to and at the time of the 2018 Transaction, the Secretary of Ritchie Holdings. Pamela Lackey is and has been a member of the Board of Directors of Ritchie Holdings at least since the time of the 2018 Transaction. Pamela Lackey is and has been a member of the Committee since the time of the 2018 Transaction. Pamela Lackey is the wife of Defendant Bruce Lackey. By virtue of her membership on the Ritchie Holdings board of directors and her membership on the Committee, Pamela Lackey is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of 2018 Transaction. As a result, Pamela Lackey was a "party in interest" as to the ESOP as defined in ERISA § 3(14), (A), (E), (F), (H) & (I), 29 U.S.C. § 1002(14) (A), (E), (F), (H) & (I), at the time of the 2018 Transaction.

11.     Defendant Cole Scharton is currently the Vice President of Finance and Operations of Ritchie Holdings. He is and has been a member of the Committee at least since the time of the 2018 Transaction. By virtue of his

membership on the Committee, Scharton is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of 2018 Transaction.

12.    The Committee, Bruce Lackey, Pamela Lackey, Cole Scharton, and any other members of the Committee are collectively the Committee Defendants. By virtue of their membership on the Committee, each of the members of the Committee is (or was during their time on the Committee) a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)

*Other Board of Director Defendants*

13.    Defendant Rick Roush is and has been a member of the Board of Directors of Ritchie Holdings at least since the time of the 2018 Transaction.

14.    Defendant Del Thacker is and has been a member of the Board of Directors of Ritchie Holdings at least since the time of the 2018 Transaction.

15.    Defendant Richard DeYoung is and has been a member of the Board of Directors of Ritchie Holdings at least since the time of the 2018 Transaction.

16.    Defendants Bruce Lackey, Pamela Lackey, Rick Roush, Del Thacker, and Richard DeYoung (and any additional members of the Board since the 2018 Transaction) are collectively referred to as the Director Defendants. The Board of Directors of Ritchie Holdings has the authority to take any action to be taken by Ritchie Holdings under Section 11.05(A) of the Plan Document. By virtue of their membership on the Board of Directors and the Board's authority to appoint and remove the Trustee and members of the Committee, each of the Director Defendants have had the discretion and authority to act for Ritchie Holdings under the Plan and is and has been a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since the inception of the ESOP effective as of January 1, 2018.

*Trustee*

17.     Defendant Miguel Paredes is the Trustee of the ESOP and acted as Trustee of the ESOP in connection with the 2018 Transaction. Pursuant to Section 13.01 of the written instrument of the Plan, the Trustee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. Defendant Paredes is the President, founder, and owner of Prudent Fiduciary Services. Defendant Paredes and Prudent Fiduciary Services maintains its principal office at 100 N. Barranca St. Suite 870 in West Covina, California.

*Selling Shareholders*

18.     Defendant Lackey Family Trust is, on information and belief, a living trust organized under the laws of California, the trustees and/or the beneficiaries of which include Defendant Bruce Lackey and Pam Lackey.

19.     As acknowledged by a June 10, 2019 article in the Fresno-based Business Journal entitled "ESOPs Rising: Employee Ownership Gaining Traction", https://thebusinessjournal.com/esops-rising-employee-ownership-gaining-traction/, for which the Lackeys and other Ritchie Trucking executives were interviewed, the Defendants Bruce Lackey and Pamela Lackey were the owners of Ritchie Trucking that sold shares to the ESOP and directly or indirectly received proceeds from the 2018 Transaction.

20.     Defendants Bruce Lackey, Pamela Lackey, and the Lackey Family Trust are collectively referred to as the Selling Shareholder Defendants.

*Ritchie Trucking*

21.     Defendant Ritchie Trucking Services Holdings, Inc. ("Ritchie Holdings") is and has been at all relevant times the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Pursuant to Section 13.01 of the written instrument of the Plan, Ritchie Holdings is also one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. Ritchie Holdings also is and has been a fiduciary of the ESOP under ERISA

§ 3(21)(A), 29 U.S.C. § 1002(21)(A), since the inception of the ESOP effective as of January 1, 2008, by virtue of its authority to appoint and remove the Trustee and members of the Committee. In addition, Defendant Ritchie Holdings is and has been a "party in interest" as to the ESOP as defined in ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14) (A) and (C), since the inception of the ESOP effective as of January 1, 2008. Ritchie Trucking is also named pursuant to Rule 19 to ensure that complete relief can be granted.

**Nominal Defendant**

22.    Nominal Defendant the People Business Employee Stock Ownership Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). As the Plan Administer is in Fresno, California, the Plan is also believed to be administered in Fresno, California. The ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), and an employee stock ownership plan under ERISA § 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument by which the Plan is maintained within the meaning of ERISA § 402, 29 U.S.C. §1102, is the People Business Employee Stock Ownership Plan (the "Plan Document"), effective as of January 1, 2018. The ESOP is named as a nominal defendant pursuant to Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the ESOP.

**V.    CLASS ACTION ALLEGATIONS**

23.    Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of the following Class:

> All participants in the ESOP from December 31, 2018, or any time thereafter (unless the participant terminated without vesting) and those participants' beneficiaries.

Excluded from the Class are (a) Defendants, (b) any fiduciary of the Plan;
(c) the officers and directors of Ritchie Trucking or of any entity in which
the individual Defendants have a controlling interest; (d) the immediate
family members of any of the foregoing excluded persons, and (e) the legal
representatives, successors, and assigns of any such excluded persons.

**Impracticability of Joinder**

24.     The members of the Class are so numerous that joinder of all
members is impracticable. According to the 2020 Form 5500 filed with the
Department of Labor, which is the most recent available Form 5500, there were 85
participants (including 62 active participants and 23 retired or separated
participants entitled to future benefits) within the meaning of ERISA § 3(7), 29
U.S.C. § 1002(7), in the ESOP as of December 31, 2020. Additionally, Section
3.05(C) of the Plan Document establishes a series of default beneficiaries for each
participant in the Plan who has not otherwise designated a beneficiary. As each
participant in the Plan has at least one beneficiary, there are at least 170 members
of the Class.

**Commonality**

25.     The issues of liability are common to all members of the Class and are
capable of common answers as those issues primarily focus on Defendants' acts or
their failure to act. Questions of law and fact common to the Class as a whole
include, but are not limited to, the following:

   a.     Whether Defendant Paredes and/or the Committee Defendants
   caused the ESOP to engage in prohibited transactions under ERISA by
   causing or permitting the ESOP to purchase Ritchie Holdings stock for more
   than adequate consideration in the 2018 Transaction;

   b.     Whether Defendant Paredes and/or the Committee Defendants
   engaged in a prudent investigation of the proposed purchase of Ritchie
   Holdings stock by the ESOP in the 2018 Transaction;

1    c.    Whether Defendant Paredes and/or the Committee Defendants

2  breached their respective fiduciary duties to ESOP and its participants by

3  causing the ESOP to purchase Ritchie Holdings stock in 2018 for more than

4  fair market value;

5    d.    Whether the Director Defendants breached their fiduciary

6  duties by failing to adequately monitor the ESOP's Trustee and the

7  Committee Defendants;

8    e.    Whether the Selling Defendant knowingly participated in

9  prohibited transactions or in fiduciary breaches by Defendant Paredes and/or

10  the Committee Defendants;

11    f.    The amount of the losses suffered by the ESOP because of

12  Defendants' fiduciary violations and/or prohibited transactions and the relief

13  appropriate to remedy Defendants' breaches and violations.

14  **Typicality**

15    26.    Plaintiff's claims are typical of those of the Class because their claims

16  arise from the same event, practice and/or course of conduct. Specifically, Plaintiff,

17  on behalf of the Class and the Plan, alleges that Defendants breached their

18  fiduciary duties, engaged in prohibited transactions, or otherwise violated ERISA

19  in connection with the sale of stock to the ESOP, management of the Plan, or in

20  performing their fiduciary duties to the Plan. Plaintiff challenges the legality and

21  appropriateness of a plan-wide transaction. Plaintiff, like other ESOP participants

22  in the Class, has received fewer shares in his ESOP account based on the same per

23  share purchase price of Ritchie Holdings stock, and also continues to suffer such

24  losses in the present because Defendants have failed to correct the overpayment by

25  the ESOP.

26

27

28

**Adequacy**

27.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

28.     Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

29.     Defendants do not have any unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

30.     Plaintiff is represented by counsel with experience in complex class actions, ERISA, and with particular experience and expertise in ESOP litigation. Plaintiff's counsel has been appointed as class counsel in numerous class action ESOP cases.

**Fed. R. Civ. P. Rule 23(b)(1)**

31.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

32.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the Plans, engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Fed. R. Civ. P. Rule 23(b)(2)**

33.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP.

34.    The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Fed. R. Civ. P. Rule 23(b)(3)**

35.    The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for Ritchie Holdings stock in the 2018 Transaction. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

36.    A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the Plan, a single proceeding rather than multiple proceedings (each of which could seek recovery for the entire Plan) will efficiently resolve the issues in this litigation. The amount to be recovered by individual Class members is small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly

duplicative litigation which might result in inconsistent judgments about Defendants' duties and liability regarding the ESOP.

37.    The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

   a.   The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

   b.   No other litigation concerning this controversy has been filed by any other members of the Class.

   c.   This District is the most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) Ritchie Holdings is headquartered in this District, (ii) the ESOP is administered in this District, (iii) certain non-party witnesses are in this District, and (iv) most of the Defendants and Class members reside, work, and/or transact business in this District.

## VI.    FACTUAL ALLEGATIONS

38.    Based on an April 27, 2021, letter from Defendant Scharton, on behalf of the Plan Administrator, to Plaintiff Imber, the 2018 Plan Document is the current written instrument of the Plan and has not been modified. According to the 2018 Plan Document, the ESOP was established effective January 1, 2018.

**Relevant Provisions of the Plan Document**

*Definitions*

39.    Article 2 of the Plan Document defines the following terms as follows:

   a.    **Administrator**: Section 2.04 defines "Administrator" to mean the committee appointed by the Employer from time to time with the authority and responsibility to manage and direct the operation and administration of the Plan (i.e., the Administrative Committee).

b.      **Beneficiary**: Section 2.08 defines "Beneficiary" means any one or more of the person(s) entitled under the provisions of the Plan to receive benefits after the death of a Participant.

c.      **Employer:**  Section 2.21 defines "Employer" to mean the Employer adopting this Plan, any predecessor employer, and any successor assuming the Plan, which shall be the principal sponsoring Employer. The principal sponsoring Employer shall be the plan sponsor (as defined in section 3(16)(B) of ERISA) and shall be responsible for the administration and management of the Plan except for those duties specifically delegated to the Administrator, the Administrative Committee, or the Trustee. Where the context so indicates, "Employer" also means any participating employer.

d.      **Fair Market Value:** For purposes of Employer Stock which is not publicly traded, Section 2.27(B) defines "Fair Market Value" to mean "the amount determined by the Trustee who shall engage a qualified independent appraiser meeting requirements similar to those contained in the Treasury regulations under Code section 170(a)(1) and as required under ERISA section 3(18)."

e.      **Participant**: "Participant" means any Employee or former Employee who has met the Plan's eligibility requirements, commenced participation in the Plan, and is or may become eligible to receive a benefit under the Plan, or whose Beneficiary(ies) may be eligible to receive any such benefit.

f.      **Trust**: "Trust" means the retirement trust created by the Employer, which trust shall be a part of this Plan, as described in this Plan and Trust document or in a separate trust agreement.

g.      **Trustee**: "Trustee" means the trustee signing the Trust and any duly appointed successor trustee(s).

*The Committee (aka the Administrator)*

40.    Section 13.05(A) provides that "the Employer has designated the Administrative Committee as the Administrator of the Plan under the Code and ERISA."  Section 13.05(A) further provides that "[a]ny action to be taken by the Employer under this Plan and Trust document shall be taken by the Board (uncles the context clearly indicates otherwise)."

41.    Section 14.01 of the Plan Document provides that "the Employer [i.e. Ritchie Holdings] shall appoint an Administrative Committee to manage and administer the Plan in accordance with the provisions hereof."

42.    Section 14.02 provides that "[t]he Administrative Committee shall act by agreement of a majority of its members, either by voting at a meeting or in writing without a meeting."

43.    Section 12.04 of the Plan Document, entitled "Powers And Duties of the Administrator" provides in relevant part as follows (emphasis added):

A.    "The primary responsibility of the Administrator is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Plan and in compliance with ERISA."

C.    "The Administrator may … *correct any defect, supply any information,* or reconcile any inconsistency in the manner and to the extent *as shall be deemed necessary or advisable to carry out the purpose of the Plan*."

D.    "The Administrator shall have the power and duty to do all things necessary or convenient to effect the intent and purpose of this Plan and, not inconsistent with any of the provisions thereof, whether or not such powers and duties are specifically described and, not in limitation but in amplification of the foregoing, and to determine all questions that shall arise hereunder, *including (if the Trustee is a directed Trustee) directions to* and questions submitted by the Trustee

on all matters necessary for it to properly discharge its powers and duties."

44.    Section 12.05 of the Plan Document provides that "with the consent of the Employer or its designee, the Administrator may… retain one or more representatives, accountants, counsel, specialists, and other advisor or clerical persons as it deems necessary or desirable to assist the Administrator in the administration of the Plan."

45.    Section 14.04 of the Plan Document provides in relevant part (emphasis added) that "[i]n addition to the duties contained in this Administrative Committee article, the Administrative Committee *is required* to provide any necessary instructions to the Trustee under the terms of this article, the investments article and any associate trust agreement entered into by the Employer and a directed or custodial trustee, unless the Employer has appointed and engaged a Registered Investment Advisor (RIA) to serve as independent fiduciary pursuant to ERISA section 405(c)." Based on a search of public records made available by the Securities and Exchange Commission, Defendant Paredes was not an RIA at the time of the 2018 Transaction.

*Trustee*

46.    Section 13.05(C) of the Plan Document provides that the Trustee has the authority to, among other things:

    a.    Purchase or sell Trust assets, pursuant to the terms of the Plan and ERISA and the Internal Revenue Code, generally;

    b.    Establish the fair market value of the Trust including any and all Plan assets;

    c.    Establish the fair market value of employer stock;

    d.    Employ advisors, agents, and counsel; and

    e.    Determine the amount and allocation of the trust income or loss.

47.     Section 19.02 of the Plan Document provides that the "Employer shall appoint one or more individuals or a corporate fiduciary to serve as Trustee" and that the "duties of the Trustee shall include but not be limited to the duties listed in the Allocation of Authority section of this Plan, receiving, and paying funds of the Trust, safeguarding and valuing Trust assets, [and] investing and reinvesting the Trust Funds…."

48.     Section 19.04 of the Plan Document provides in relevant part that "the Trustee shall have all the powers, authority, rights and privileges of an absolute owner of the Trust" and "may receive, hold, manage, invest and reinvest, sell, exchange, dispose of, encumber, hypothecate, pledge, mortgage, lease, grant options respecting, repair, alter, insure, or distribute any and all property in the Trust; may borrow money, …vote or execute proxies…; may renew, extend the due date, compromise, arbitrate, adjust, settle, enforce or foreclose by judicial proceedings or otherwise defend against the same, any obligations or claims in favor of or against the Trust; may exercise options, employ agents; and, whether specifically referred to or not, may do all such acts, take all such actions and proceedings and exercise all such rights and privileges as if the Trustee were the absolute owner of any and all property in the Trust."

49.     Section 19.08, entitled "Resignation Or Removal," provides that "upon the Trustee's receipt of instructions or directions from the Employer or the Administrative Committee with which the Trustee is unable or unwilling to comply, the Trustee may resign upon written notice to the Employer and the Administrative Committee."  Section 19.08 also provides that the "Employer may remove the Trustee without cause at any time upon thirty (30) days notice."

*Duties of Fiduciaries*

50.     Section 13.02 of the Plan Document provides that "Each fiduciary shall discharge his, her, or its duties with respect to the Plan solely in the interest of the Participants and Beneficiaries" and:

A.    For the exclusive purpose of providing benefits to Participants and their Beneficiaries;

B.    With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

C.    In accordance with the Plan and Trust Document.

51.    Section 13.06 of the Plan Document provides that "[a] fiduciary shall not cause the Plan to engage in a transaction if he, she, or it knows or should know that the transaction constitutes a prohibited transaction under section 406 of ERISA or Code section 4975, unless the transaction is exempt under section 408 of ERISA or code section 4975."

**Background of Ritchie Trucking**

52.    According to the Ritchie Trucking website, Bill and Elinor Ritchie founded Ritchie Trucking Service, Inc. in 1964. In October 1986, Defendants Bruce and Pam Lackey purchased the company from the Ritchies.

53.    According to Certificate of Merger filed with the California Secretary of State and dated December 19, 2018, Ritchie Trucking Service, Inc. merged with Ritchie Trucking Service, LLC in December 2018. Based on the Review Report of Independent Accountants and Consolidated Financial Statements for Ritchie Holdings dated December 31, 2019, Ritchie Trucking Service, LLC, is a wholly owned subsidiary of Ritchie Holdings.

54.    Ritchie Trucking and its predecessors and affiliates provide and have provided logistics services including hauling, last-mile delivery, warehousing, distribution, and installation of household appliances.

55.    Based on the personal knowledge of Plaintiff, from at least January 1, 2012, through the date of the 2018 Transaction, Ritchie Trucking and its predecessors/affiliates' largest source of revenue was the delivery and installation

of appliances for General Electric—representing $30-35 million of Ritchie Trucking's approximately $40 million in revenue. Ritchie Trucking contracted with General Electric to provide these services with respect to General Electric appliances sold by Home Depot.

**Ritchie Trucking's Market Position is Imperiled by Changes to their Primary Client's Business Practices**

56.    At a national meeting of General Electric contractors that Plaintiff attended in Louisville, Kentucky in 2016, General Electric representatives announced their intention to end their existing contract relationships for the delivery and installation of appliances, including with Ritchie Trucking. Instead of contracting directly with companies like Ritchie Trucking, General Electric announced its plans to have Home Depot's network of warehouses take over certain logistics functions and as a result, Home Depot would put delivery contracts out for bid. At this meeting, General Electric representatives explained that these changes would gradually be made in all markets where General Electric had existing contractor relationships for the delivery and installation of appliances, and that incumbent contractors needed to prepare for the bidding process that Home Depot would conduct.

57.    Plaintiff Imber had multiple conversations with Defendant Bruce Lackey following this Louisville, Kentucky meeting in which they discussed the impact that this change in General Electric's practices would have on Ritchie Trucking's business. Specifically, Imber and Bruce Lackey discussed the significant business risk that Ritchie Trucking faced in having to bid for and potentially lose these contracts and that the contracts delivering and installing appliances for General Electric represented the bulk of the Company's business.

**Defendants Orchestrate the Sale of Ritchie Trucking to the ESOP but Conceal Ritchie Trucking's Deteriorating Market Position.**

58.     In 2017, Defendants Bruce and Pam Lackey approached Plaintiff Imber regarding a potential sale of Ritchie Trucking collectively to Plaintiff Imber and Greg Siemens, Ritchie Trucking's safety director. Bruce and Pam Lackey proposed a price in the range of $10-12 million. Plaintiff Imber declined to pursue this opportunity in part because he was aware that Home Depot would shortly be pulling markets away from General Electric's incumbent appliance delivery contractors.

59.     In the second or third quarter of 2018, Plaintiff Imber learned that Defendants Bruce and Pam Lackey were pursuing a sale of Ritchie Trucking to an employee stock ownership plan.

60.     During the process of the sale of the ESOP that culminated in the 2018 Transaction, Defendant Scharton was the primary Ritchie Trucking employee assigned to be responsible for providing information to the Trustee and his advisors on behalf of Ritchie Trucking and the selling shareholders.

61.     Poncho Baker, the CEO of Ritchie Trucking, told Plaintiff Imber that Defendant Bruce Lackey was dissatisfied with Defendant Scharton's performance in his role of providing information to the Trustee and his advisors. Specifically, Mr. Baker mentioned to Plaintiff on multiple occasions that the financial figures that Defendant Scharton was providing in connection with the transaction "changed often," and that one could not know what set of financials to believe.

62.     In the third quarter of 2018, General Electric notified Ritchie Trucking that General Electric would be terminating Ritchie Trucking's contract for appliance delivery and installation in the Seattle market, and that Home Depot had put the delivery contract for that market out for bid but had awarded it to a competitor. Defendant Scharton told Plaintiff Imber that Scharton wanted to provide that information to the ESOP's advisors.

63.     After his conversation with Scharton, Plaintiff Imber approached Defendant Bruce Lackey directly and asked whether information about Ritchie's loss of contracts should be provided to the ESOP's advisors. Defendant Bruce Lackey responded to Plaintiff Imber that Ritchie Trucking was Lackey's business, and that he (Lackey) would decide what was shared with the ESOP's advisors. Defendant Bruce Lackey was visibly upset that Plaintiff Imber and Defendant Scharton had even raised the issue.

64.     On December 31, 2018, Defendant Paredes caused the ESOP to purchase 2,000,000 shares of Ritchie Holdings. Based on the Review Report of Independent Accountants and Consolidated Financial Statements for Ritchie Holdings dated December 31, 2019, and email correspondence between Plaintiff Imber, Mr. Baker, and Defendant Scharton, these shares were acquired in exchange for notes in the amount of $19,543,000.

65.     Following the 2018 Transaction, Mr. Baker and Defendant Scharton told Plaintiff Imber on multiple occasions that, in their view, the ESOP had overpaid for the stock of Ritchie Holdings. They both believed this was because of the loss of revenue due to declining market share, the risk of which was never shared with the ESOP's advisors.

66.     Based on the statements by Mr. Baker and Defendant Scharton, Defendants Bruce Lackey and Scharton never informed Defendant Paredes or his advisors about the risks posed to Ritchie Trucking's market share by the imminent termination of the Seattle market contract or about the risks posed by General Electric and Home Depot's changing business practices more broadly.

67.     As a result of the failure to disclose this information to the Trustee and the Trustee's failure to conduct a prudent investigation, the ESOP paid more than fair market value for Ritchie Holdings stock in the 2018 Transaction. Based on the available information, the purchase price for the 2018 Transaction was based in part on a valuation report that was unreliable and did not take into account

or did not sufficiently take into account the following facts: (1) the General Electric contract for the Seattle market would be terminated; (2) Ritchie Trucking would need to re-bid for Home Depot work in the Seattle market, risking the potential loss of that business, (3) all other General Electric contracts in other markets were to be subjected to the same re-bidding process, risking the potential loss of Ritchie Trucking's business in those markets, and (3) less than two years before the transaction, the Lackeys had discussed selling the Company to Plaintiff Imber and Siemens at a price in the $10-12 million range, substantially below the $19,543,000 price at which the 2018 Transaction closed.

68.    Defendants Bruce Lackey, Pam Lackey, and Cole Scharton were all aware of the imminent termination of the Seattle market contract and the risks to Ritchie Holdings posed by General Electric and Home Depot's changing business practices.

69.    Defendants Bruce Lackey and Pam Lackey were aware that they had attempted to sell the Company to persons including Plaintiff Imber at a price in the $10-12 million range less than two years prior to the 2018 Transaction. Through their various positions, all of Defendants had access to or had the power to request the financial information upon which the valuation for the 2018 Transaction was based and because of their status as fiduciaries for the ESOP would have had access to the valuation report itself.

70.    As members of the Committee, the Committee Defendants had the power and duty under Section 12.04(C) of the Plan Document to "supply any information" as "necessary or advisable to carry out the purpose of the Plan." Under Section 12.04(D) of the Plan Document, the Committee had the power and duty to respond to "questions… submitted by the Trustee on all matters necessary for it to discharge its power and duties." As fiduciaries of the ESOP and in order to fulfill their obligations under these Section 12.04, the Committee Defendants thus had a duty to provide the Trustee with complete and accurate information.

71.    A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for Ritchie Holdings shares and/or the debt incurred in connection with the Transaction was excessive. The heavy concentration of Ritchie Trucking's business with a single client and the inconsistent and/or incomplete financial information being provided by Defendant Scharton to the ESOP's advisors should have caused Defendant Paredes to undertake an investigation of risks to the Company's existing contracts, the reliability of the Company's financial projections, and other efforts to sell the Company (and the prices that had been contemplated for such transactions). Had Defendant Paredes in his role as Trustee conducted such an investigation, he would have discovered that the valuation used for the 2018 Transaction was flawed in failing to take these factors into consideration.

**Ritchie Trucking's Market Position Continues to Deteriorate, but Defendants Take No Corrective Action Regarding the 2018 Transaction**

72.    Following the 2018 Transaction, Ritchie Trucking's market position continued to deteriorate. In mid-2019, Home Depot awarded the General Electric contact in the Everett, Washington market, which had previously been awarded to Ritchie Trucking, to a competitor. In October 2020, Home Depot awarded the General Electric contract for the Portland, Oregon market, which had previously been awarded to Ritchie Trucking, to a competitor.

73.    Following the 2018 Transaction, Ritchie Trucking lost other non-General Electric contracts. As a result of the termination of these contracts, the 2019 financial statements reported that just one customer accounted for 92% of revenue and 95% of accounts receivable.

74.    After the 2018 Transaction closed, the continuing deterioration in the market position of Ritchie Trucking should have caused Defendant Paredes and the Committee (which consisted of Defendants Bruce Lackey, Pam Lackey, and Cole Scharton), at a minimum, to investigate whether the ESOP had paid more than fair

market value in the 2018 Transaction. On information and belief, neither Defendant Paredes nor the Committee ever undertook such an investigation or took any corrective action to remedy the ESOP's overpayment for Ritchie Trucking stock.

75.    Following the 2018 Transaction, the share price of Ritchie Trucking stock deteriorated substantially, and has not recovered. The ESOP purchased 2,000,000 shares of common stock valued at $9.7715 per share. According to the Form 5500 filed by Poncho Baker on behalf of the Plan Administrator on October 14, 2019, for the period ending December 31, 2018, the employer stock assets of the Plan had a value of $1,160,000, for an implied share price of $0.58.

76.    According to the Form 5500 filed by Poncho Baker on behalf of the Plan Administrator on September 30, 2020, for the period ending December 31, 2019, the employer stock assets of the Plan had a value of $3,940,000, for an implied price of $1.97 per share.

77.    According to the Form 5500 filed by Defendant Scharton on behalf of the Plan Administrator on July 27, 2021, for the period ending December 31, 2020, the employer stock assets of the Plan had a value of $3,940,000, for an implied price of $1.97 per share. In other words, despite contributions paid into the ESOP on the ESOP loan, the stock value of Ritchie Trucking remained flat.

1     78.    The following chart illustrates the deterioration in the value of Ritchie

2   Trucking stock.:

3

4

5



6

7

8

9

10

11

12

13   **Plaintiff Requests Information about the ESOP**

14     79.    By a letter dated April 9, 2021, sent by certified mail to the Plan

15   Administrator pursuant to and referencing ERISA §§ 104(b) and 404(a)(1),

16   Plaintiff Imber requested that the Plan Administrator provide the documents

17   specified by ERISA § 104(b). Among the documents specifically requested by

18   Plaintiff's letter were any trust agreement and any valuation or other document

19   used to determine the price at which his shares had been allocated and a copy of

20   the most recent valuation and other documents setting forth how the value of her

21   shares was determined.

22     80.    In a letter dated April 27, 2021, Defendant Scharton responded to

23   Plaintiff's April 9, 2021, letter. In his April 27, 2021, letter. Mr. Scharton

24   acknowledged that Plaintiff's letter had been received on April 16, 2021, and

25   enclosed some, but not all of the documents that Plaintiff had requested. However,

26   Defendant Scharton advised that the Plan Administrator would not provide copies

27   of the valuations that Mr. Imbert had specifically requested. Additionally,

28

CLASS ACTION COMPLAINT                                    25

Defendant Scharton stated he had enclosed the "Trust Agreement" with the letter, but the documents accompanying the letter did not include any trust agreement.

81.    In letter dated June 23, 2021, Plaintiff responded to Mr. Scharton and cited authorities in this Circuit explaining that plan administrators must disclose ESOP valuations in response to a request pursuant to ERISA § 104(b)(4). Plaintiff also requested Defendants to provide a copy of the trust agreement.

82.    In an email dated July 2, 2021, Mr. Scharton refused to provide the valuation reports because he asserted that "the valuation is not something that participants are to receive, as it is a highly sensitive and confidential trustee work product." Mr. Scharton's email did not mention or provide the trust agreement requested or state that there was no separate trust agreement.

**COUNT I**

**Engaging in Prohibited Transaction Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against Defendant Paredes, the Selling Shareholder Defendants and the Committee Defendants**

83.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

84.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

85.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest" or "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

86.    ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to

or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

87.     ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

88.     ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include among others: "(A) any fiduciary . . . of such employee benefit plan"; "(F) a relative" – which includes a spouse, ancestor, lineal descendant or the spouse of a lineal descendant – of a fiduciary; "(G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of . . . the beneficial interest of such trust or estate, is owned directly or indirectly" by a fiduciary or a relative of the fiduciary; and "(H) an employee, officer or director" or "a 10 percent or more shareholder" of an employer whose employees are covered by the Plan. As members of the board of directors of Ritchie Holdings and of the Committee and as spouses of such persons, Defendants Bruce Lackey and Pam Lackey—and their relatives or trusts for their benefit or the benefit of their relatives including Defendant Lackey Family Trust—qualified as "parties in interest" within the meaning of ERISA §§ 3(14) (A), (F), (G), and (H).

89.     As Trustee, Miguel Paredes caused the ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for the common stock of Ritchie Holdings purchased in the 2018 Transaction. Specifically, the ESOP paid more than fair market value for shares sold by the Selling Shareholder Defendants. As the plan fiduciary causing the 2018

Transaction, Defendant Paredes is liable for violations of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D).

90.    To the extent that the Trustee acted at the direction of the Committee (in accordance with the powers of the Committee under Section 12.04(C)-(D) of the Plan Document) in executing the ESOP's purchase of Ritchie Holdings stock, the Committee Defendants caused the ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for the common stock of Ritchie Holdings purchased in the 2018 Transaction. Specifically, the ESOP paid more than fair market value for shares sold by the Selling Shareholder Defendants.

91.    Even if the Trustee were directed by the Committee to execute ESOP's purchase of Ritchie Holdings stock in the 2018 Transaction, the Trustee still had an obligation under ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(2) to refuse to follow direction by the Committee that either violated the terms of the Plan or that violated ERISA. Causing the ESOP to purchase employer stock (i.e., Ritchie Trucking stock) at more than fair market value in the 2018 Transaction violated both the terms of the Plan, including Sections 13.02, 13.05 and 13.06 of the Plan Document, as well as ERISA. As Section 13.05(C) provides that the Trustee had the obligation to establish fair market value for the employer stock the Trustee would have had to know that the direction to engage in the 2018 Transaction was not proper and was inconsistent with the terms of the Plan and ERISA unless the Trustee had breached its obligations under the terms of the Plan. As a result, even if the Trustee received direction from the Committee to engage in the 2018 Transaction, Defendant Paredes caused the ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D). As a result, Defendant Paredes is liable for violations of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D).

92.    As members of the board of directors of Ritchie Holdings, as members of the Committee, and as trustees and/or beneficiaries of Defendant Lackey Family Trust through which the stock was sold to the ESOP in the 2018 Transaction, Defendants Bruce Lackey and Pam Lackey were aware of sufficient facts that the 2018 Transaction constituted a prohibited transaction with parties-in-interest. As parties-in-interest, the Selling Shareholder Defendants are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

**COUNT II**
**Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b), 29 U.S.C. §§ 1106(a)-(b), Against Selling Shareholder Defendants**

93.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

94.    ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not: (1) "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants;" (2) "deal with the assets of the plan in his own interest or for his own account;" (3) "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

95.    As members of the Board of Directors of Ritchie Holdings and members of the Committee, Defendants Bruce Lackey and Pam Lackey were fiduciaries of the ESOP at the time of the 2018 Transaction.

96.    On information and belief, Defendants Bruce and Pamela Lackey, in their capacities as trustees of the Lackey Family Trust, acted in the 2018 Transaction on behalf of the Lackey Family Trust and on behalf of themselves as beneficiaries of the Lackey Family Trust. The Lackey Family Trust and its beneficiaries' interests in the 2018 were adverse to both the interests of the Plan and its participants: the higher the price paid to the Lackey Family Trust for

Ritchie Trucking stock, the higher the ESOP transaction debt. And the higher the ESOP transaction debt, the less value that would ultimately be available to pay benefits to participants. In acting on behalf of the Lackey Family Trust and its beneficiaries in the 2018 Transaction Defendants Bruce and Pamela Lackey thus violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

97.    On information and belief, Defendants Bruce and Pamela Lackey, in their capacities as trustees of the Lackey Family Trust, received Plan assets—consideration for their shares of Ritchie Trucking stock—on behalf of a trust of which they were themselves beneficiaries. In so doing, Defendants Bruce and Pamela Lackey dealt with the assets of the Plan in their own interest and thus violated ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

98.    On information and belief, Defendants Bruce and Pamela Lackey, in their capacities as beneficiaries of the Lackey Family Trust, received consideration for their personal account from the Trustee of the Plan in connection with the 2018 Transaction, a transaction involving the Plan in which the Trustee dealt with the Plan. In so doing, Defendants Bruce and Pamela Lackey received consideration for their own personal account from a party dealing with the Plan in connection with a transaction involving the Plan and thus violated ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

99.    Because Defendants Bruce and Pamela Lackey were both trustees and beneficiaries of the Lackey Family Trust, they necessarily had knowledge of their own actions in each of these capacities, as did the Lackey Family Trust. The Selling Shareholder Defendants can be held liable for their knowing participation in the breaches of each of the other Selling Shareholder Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

100.    By selling their shares of Ritchie Holdings stock to the ESOP in the 2018 Transaction through Defendant Lackey Family Trust, the Selling Shareholder Defendants (a) acted in a transaction involving a plan where their own interests

were adverse to those of the ESOP within the meaning of ERISA § 406(b)(1); (b) dealt with the assets of the Plan, which purchased their Ritchie Holdings stock, in their own interest within the meaning of ERISA § 406(b)(2); and (c) as a result of the receipt of the proceeds from the sale of their Ritchie Holdings stock, received consideration for the their own personal account in connection with a transaction involving assets of a plan within the meaning of ERISA § 406(b)(3).

101.    By selling their shares of Ritchie Holdings stock to the ESOP in the 2018 Transaction through Defendant Lackey Family Trust, the Selling Shareholder Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(b), 29 U.S.C. §§ 1106(b) for which they are liable to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

**COUNT III**
**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) Against Defendant Paredes and the Committee Defendants**

102.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

103.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

104.    In the context of a transaction involving the assets of a plan, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the plan and its participants receives adequate consideration for the plan's assets and the participants' account in the plan.

105.    Pursuant to ERISA § 3(18), 29 U.S.C. § 1002(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with Department of Labor regulations.

106.    To fulfill his fiduciary duties, Defendant Paredes and, to the extent that the Committee directed the Trustee in connection with the 2018 Transaction, the Committee Defendants were required to undertake an appropriate and independent investigation of the fair market value of Ritchie Holdings stock in the 2018 Transaction in order to fulfill their fiduciary duties. Among other things, Defendant Paredes and/or the Committee Defendants were required (1) to ensure that the appraiser was qualified to provide the appraisal, (2) to ensure that the appraiser had sufficient information to reach his conclusions and (3) to conduct a thorough and independent review of any "independent appraisal", which includes the obligation to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2018 Transaction, and to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

107.    An appropriate investigation would have revealed that the valuation used for and the price paid by the Plan in the 2018 Transaction did not reflect the fair market value of the Ritchie Holdings stock purchased by the ESOP, the 2018 Transaction was not in the best interests of the Plan participants, and the 2018 Transaction would cause the Plan to take on excessive debt.

1    108.   By causing the Plan to engage in the 2018 Transaction, Defendant
2    Paredes breached his fiduciary duties under ERISA §§ 404(a)(1)(A) and (B), 29
3    U.S.C. §§ 1104(a)(1)(A) and (B), and caused losses to the ESOP and the accounts
4    of the Class Members.

5    109.   As the Committee had an obligation under the terms of the Plan to
6    supply information under Section 12.04 of the Plan Document and broad powers
7    under Section 12.04 to "do all things necessary" to "effect the intent and purpose
8    of the Plan," the Committee, whether they directed the Trustee or not in connection
9    with the 2018 Transaction, the Committee Defendants breached their fiduciary
10   duties under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B),
11   and caused losses to the ESOP and the accounts of the Class Members.

12   110.   By causing the Plan to engage in the 2018 Transaction, Defendant
13   Paredes violated the terms of the Plan, including Sections 13.02, 13.05 and 13.06
14   of the Plan Document, breached his fiduciary duties under ERISA § 404(a)(1)(D),
15   29 U.S.C. § 1104(a)(1)(D), and caused losses to the ESOP and the accounts of the
16   Class Members.

17   111.   The Committee Defendants violated the terms of the Plan, including
18   Sections 12.04, 13.02 and 13.06 of the Plan Document, and thus breached their
19   fiduciary duties under ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), and
20   caused losses to the ESOP and the accounts of the Class Members.

21   112.   To the extent that there has been a separate trust agreement for the
22   Plan since at least December 2018,- the trust agreement or the Plan Document
23   provide that a trustee has the authority to act with respect to the Plan only as
24   directed by a fiduciary of the Plan or any other individual or entity and to the
25   extent that Defendant Paredes caused the Plan to engage in the 2018 Transaction
26   without such direction, Defendant Paredes breached his fiduciary duties under
27   ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), and caused losses to the ESOP
28   and the accounts of the Class Members.

113.    To the extent that the Trustee acted at the direction of the Committee (in accordance with the powers of the Committee under Section 12.04(C)-(D) of the Plan Document) in executing the ESOP's purchase of Ritchie Holdings stock, the Committee Defendants violated their fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to ensure that the ESOP paid no more than fair market value for the common stock of Ritchie Holdings purchased in the 2018 Transaction. Specifically, the ESOP paid more than fair market value for shares sold by the Selling Shareholder Defendants.

114.    Even if the Trustee were directed by the Committee to execute ESOP's purchase of Ritchie Holdings stock in the 2018 Transaction, the Trustee still had an obligation under ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(2) to refuse to follow direction by the Committee that either violated the terms of the Plan or that violated ERISA. Causing the ESOP to purchase employer stock (i.e., Ritchie Trucking stock) at more than fair market value in the 2018 Transaction violated both the terms of the Plan, including Sections 13.02, 13.05 and 13.06 of the Plan Document, as well as ERISA. As Section 13.05(C) provides that the Trustee had the obligation to establish fair market value for the employer stock the Trustee would have had to know that the direction to engage in the 2018 Transaction was not proper and was inconsistent with the terms of the Plan and ERISA unless the Trustee had breached its obligations under the terms of the Plan. As a result, even if the Trustee received direction from the Committee to engage in the 2018 Transaction, Defendant Paredes breached his fiduciary duties in violation of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

**COUNT IV**
**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) Against Defendant Paredes and the Committee Defendants to Remedy or Correct the 2018 Transaction**

115.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

116.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

117.   Section 13.05(C) of the Plan Document provides that the Trustee has the authority to "[e]mploy advisors, agents, and counsel" and Section 19.04 of the Plan Document provides the Trustee with the authority to "compromise" or "settle" or "enforce … by judicial proceeding … any obligations, or claims in favor of ... the Trust."  As a result of such power, the Trustee had the power, authority and obligation to institute a lawsuit against any fiduciary, including himself, who breached his, her or its duties in the 2018 Transaction and was required to remedy the Plan's overpayment for Ritchie Holdings stock after the 2018 Transaction, including as necessary correcting the prohibited transaction by employing counsel to bring a legal action seeking the overpayment from the Selling Shareholder Defendants and/or the breaching Trustee (i.e., himself). By failing to institute such a lawsuit, Defendant Paredes breached his fiduciary duties.

118.   Section 12.04(C) of the Plan Document provides that the Committee has the power and duty to "correct any defect, [and] supply any information, or

reconcile any inconsistency in the manner and to the extent as shall be deemed necessary or advisable to carry out the purpose of the Plan." As a result of such powers, the Committee had the power, authority and obligation to do one or more of the following: (1) inform the Trustee that the 2018 Transaction was not for adequate consideration as not all relevant and material information had been provided to determine the fair market value and the 2018 Transaction would need to be corrected; (2) inform the Board of Directors that the 2018 Transaction had likely violated ERISA and the terms of the Plan and recommend that the breaching fiduciaries be removed and replaced with fiduciaries who would correct the 2018 Transaction; and/or (3) take steps to correct the defects in the 2018 Transaction, including if necessary by instituting a lawsuit against any fiduciary, including themselves, who breached his, her or its duties in the 2018 Transaction and was required to remedy the Plan's overpayment for Ritchie Holdings stock after the 2018 Transaction. By failing to take such steps that would correct the defects in the 2018 Transaction, the Committee Defendants breached their fiduciary duties.

119.    Section 13.05 of the Plan Document also provides that the Trustee has the authority to "[v]ote the Trust's shares of Employer Stock." As a result of this authority, the Trustee had the power to vote the Trust shares of Employer stock in a manner that would have removed the existing Board of Directors, appoint independent Directors who would act appropriately to remove and replace the members of the Committee who had breached their fiduciary duties (i.e. all of them), and replace them with members of the Committee who would appropriately act to remedy the 2018 Transaction. By failing to take such action, Defendant Paredes breached his fiduciary duties.

120.    By failing to correct the 2018 Transaction, Defendant Paredes breached his fiduciary duties under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), and caused losses to the ESOP and the accounts of the Class Members.

121.    By failing to correct the 2018 Transaction, the Committee Defendants breached their fiduciary duties under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), and caused losses to the ESOP and the accounts of the Class Members.

**COUNT V**

**Failure to Disclose Information Required by ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), Against the Committee Defendants On Behalf of Plaintiff Brandon Imber Individually**

122.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

123.    ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the request.

124.    In the Ninth Circuit, the documents that a plan administrator must provide pursuant to ERISA § 104(b)(4) are those that allow the participants to know exactly where they stand with respect to the plan—what benefits they may be entitled to, what circumstances may preclude them from obtaining benefits, what procedures they must follow to obtain benefits, and who are the persons to whom the management and investment of their plan funds have been entrusted.

125.    The Ninth Circuit has also recognized that a fiduciary's duty under ERISA § 404(a)(1)(A) to disclose is not limited to those specified in the statute, but extends to additional disclosures to the extent that they relate to the provision of benefits or the defrayment of expenses.

126.    As the Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the Committee was obligated to comply with ERISA § 104(b), 29 U.S.C. § 1024(b) as well as ERISA § 404(A)(1), 29 U.S.C. § 1104(a)(1).

127.    Plaintiff Brandon Imber sent the Plan Administrator on April 9, 2021, a letter requesting that the Plan provide documents pursuant to ERISA § 104(b)(4) including, among others, the trust agreement for the Plan and valuation reports of the stock held by the Plan.

128.    By letter dated April 27, 2021, Defendant Scharton on behalf of the Plan Administrator provided Plaintiff with some of the requested documents but stated that the Plan Administrator would not provide copies of the valuations that Plaintiff requested. Although the Plan Administrator's April 27, 2021, letter stated that the "Trust Agreement" was enclosed with the letter, the documents that the Plan Administrator provided with the letter did not include any "Trust Agreement."

129.    Plaintiff sent a follow-up letter to the Plan Administrator on June 23, 2021, requesting again that it provide the Trust Agreement and the ESOP valuation reports.

130.    By email dated July 2, 2021, Defendant Scharton on behalf of the Plan Administrator stated again that the Plan Administrator would not provide the requested valuation reports. The Plan Administrator's email did not address Plaintiff's request for the Trust Agreement.

131.    The Plan uses and has used valuations of Ritchie Holdings' stock held by the ESOP in both allocating shares to participants' accounts and in determining at what price to liquidate the shares in their accounts. As such, valuation reports of the stock held by the ESOP are documents under which the ESOP is operated and must be disclosed pursuant to ERISA § 104(b)(4).

132.    Pursuant to ERISA § 502(a)(1)(A) a participant may sue for the relief provided in ERISA § 502(c). Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c),

"[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable for up to $110 per day in civil penalties.

133.    As a result of their failure to produce the requested valuation reports, the Committee Defendants are liable for the penalties available under ERISA § 502(c).

134.    To the extent that there is a Trust Agreement for the ESOP, as a result of their failure to produce the document, the Committee Defendants are liable for the penalties available under ERISA § 502(c).

135.    As a result of their failure to produce the requested valuation reports and/or any trust agreement, the Committee Defendants breached their fiduciary duties to Plaintiff Imber pursuant to ERISA § 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) and should be liable via surcharge to the equivalent of the penalty under ERISA § 502(c).

**COUNT VI**
**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) Against the Director Defendants For Failure to Monitor the Trustee and Committee Defendants**

136.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

137.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in

CLASS ACTION COMPLAINT                                                          39

accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

138.   Under ERISA, a fiduciary charged with the authority to appoint and remove other fiduciaries or who, as a practical matter, in fact appoints other fiduciaries has an ongoing duty to monitor the performance of those persons whom the fiduciary is empowered to remove. A monitoring fiduciary must, at reasonable intervals, ensure that the fiduciary that it has appointed is acting in compliance with the terms of the applicable plan, acting in accordance with ERISA and applicable law, and satisfying the needs of the plan. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the management of the plan assets. A monitoring fiduciary must take prompt and effective action to protect the plan and participants when the monitored fiduciaries fail to perform their obligations.

139.   Section 13.05 of the Plan Document provides that the "Employer or its designee shall have the authority to . . . appoint and remove the Trustee."

140.   Section 14.01 provides that "[t]he Employer shall appoint an Administrative Committee to manage and administer this Plan" and provides that any member of the Committee may be "remov[ed] by the Employer."

141.   Section 13.05 of the Plan Document also provides that "[a]ny action to be taken by the Employer under this Plan and Trust document shall be taken by the Board (unless the context clearly indicates otherwise)."  As a result of this provision, as well as Sections 13.05 and 14.01, the Board of Directors had the power to appoint and remove the Trustee and the members of the Committee as well as the duty to monitor the Trustee and the members of the Committee.

142.   The Director Defendants were fiduciaries of the Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because, pursuant to Section 13.05 of the Plan Document, the Director Defendants were responsible for appointing, removing and monitoring the Trustee for the Plan. The Director Defendants were fiduciaries of

the Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because, pursuant to Section 14.01 of the Plan Document, the Director Defendants were responsible for appointing, removing and monitoring the members of the Committee.

143.    Had the Director Defendants appropriately monitored the Trustee, they would have determined the Trustee had breached its duties or engaged in a prohibited transaction because: (1) the Trustee's process of establishing the fair market value of Ritchie Holdings stock for the 2018 transaction was flawed; (2) the Trustee's investigation of fair market value failed to adequately take into account material financial information about risks to or loss of the Company's existing contracts; (3) the Lackeys and company management (at Bruce Lackey's direction) had withheld material information from the Trustee and his advisors; (4) the price of the 2018 Transaction exceeded the prior price that had been proposed by the Lackeys to sell the Company; (5) the Committee failed to properly disclose this information to the Trustee as its was required to do under the Plan; (6) the Committee provided an improper direction that the Trustee should not have followed; and (7) both the Trustee and the Committee failed to take any corrective action after the 2018 Transaction.

144.    An ERISA fiduciary's duty of loyalty and prudence under ERISA §§ 404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply with the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

145.    Defendants Bruce Lackey and Pam Lackey had actual knowledge of material information that should have been disclosed to the Trustee including the loss of and risk to key contracts and the prior price at which they had offered to sell the Company, but failed to disclose this information to the Trustee and his

advisors. To the extent that the other Director Defendants knew or should have known material information that should have been disclosed, but was not disclosed to the Trustee, those Defendants also had an obligation to disclose this information to the Trustee.

146.   By failing to properly monitor the Trustee and the Committee Defendants, withholding material information from the Trustee, permitting the Trustee and the Committee Defendants to proceed with the 2018 Transaction, and failing to take sufficient steps or corrective action to protect ESOP participants, the Director Defendants breached their fiduciary duties under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

**COUNT VII**
**Co-fiduciary Liability Under ERISA § 405, 29 U.S.C. § 1105,**
**Against the Director Defendants, Committee Defendants,**
**and Defendant Paredes**

147.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

*ERISA § 405(a)(1)*

148.   ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission of such other fiduciary is a breach…."

149.   The Committee Defendants had a duty under the Plan to provide information to the Trustee and to respond to his questions in the course of the due diligence process for the 2018 Transaction and also to provide a copy of the valuation report to Plaintiff upon written request. By instructing Defendant Scharton not to disclose to the Trustee or his advisors that General Electric would be terminating Ritchie Trucking's contract in the Seattle market (or other information about the loss or potential loss of contracts, Defendant Bruce Lackey

knowingly participated in and undertook to conceal Defendant Scharton's failure to inform the Trustee. By obeying Bruce Lackey's instruction, Defendant Scharton knowingly participated in and undertook to conceal Defendant Bruce Lackey's failure to inform the Trustee. By refusing to provide a copy of the valuation reports and following the Trustee's recommendation or instruction not to provide such reports to a plan participant upon request (particularly given citation to law in the Ninth Circuit requiring it), the Committee Defendants knowingly undertook to conceal the breaches of at least Defendants Bruce Lackey, Scharton, and the Trustee (as well as their own failure to provide information).  To the extent that other Committee members knowingly participated in other breaches or other acts of concealment or knew of them and failed to remedy them, they also knowingly participated in these breaches, By doing so, Defendants Bruce Lackey, Scharton and the Committee (as well as other Committee members who knowingly participated in or knowingly attempted to conceal these breaches) violated ERISA § 405(a)(1) and are liable for each other's breaches.

*ERISA § 405(a)(2)*

150.   ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach…."

151.   *Co-Fiduciary Liability of Trustee Paredes for the breaches by the Committee Defendants.* The Committee Defendants failed to comply with their duties under ERISA § 404(a)(1) by failing, as required by the Plan Document, to supply information to the Trustee necessary for it to carry out its responsibilities to the Plan, including that Ritchie Holdings had lost the General Electric for the Seattle market and that the company's market position was deteriorating and/or by providing the Trustee with an improper instruction to engage in the 2018

Transaction and by failing to provide Plaintiff Imber with documents to which he was entitled upon request. As a result of these failures in his capacity as Trustee on behalf of the Plan, Defendant Paredes enabled their fiduciary breaches, violated ERISA § 405(a)(2), and is liable for their breaches.

152. *Co-Fiduciary Liability of the Committee Defendants and Director Defendants for the breaches by Trustee Paredes.* Defendant Paredes failed to comply with his duties as Trustee under ERISA § 404(a)(1) by causing the 2018 Transaction in violation of ERISA and the Plan. By failing to take corrective action against the Trustee on behalf of the Plan and/or otherwise remedy the defects in the 2018 Transaction, the Committee Defendants enabled the Trustee's fiduciary breaches, violated ERISA § 405(a)(2), and are liable for his breaches. By failing to remove Defendant Paredes from his role as Trustee to stop the 2018 Transaction, the Director Defendants enabled his fiduciary breaches, violated ERISA § 405(a)(2), and are liable for his breaches.

153. *Co-Fiduciary Liability of the Trustee for the breaches by Director Defendants.* The Director Defendants failed to comply with their duties under ERISA § 404(a)(1) by failing in their duties: (1) to monitor the performance of the Trustee and the Committee; (2) to disclose information to the Trustee; and (3) to exercise their power to remove the Trustee and the members of the Committee once the Board knew or should have known that one or more of them had violated his duties to the Plan by causing the 2018 Transaction or in response to Plaintiff Imber's request for documents about the Plan to which he was entitled. By failing to remove the Board and/or bring suit against the Board of Directors on behalf of the Plan or otherwise remedy or correct the 2018 Transaction, Defendant Paredes enabled their fiduciary breaches, violated ERISA § 405(a)(2), and is liable for their breaches.

*ERISA § 405(a)(3)*

154.    ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach…."

155.    Defendants Scharton and Bruce Lackey had knowledge of each other's failure to inform the Trustee of Ritchie Trucking's deteriorating market position and specifically that General Electric would be terminating Ritchie Trucking's contract in the Seattle market. Defendants Scharton and Bruce Lackey also thus had knowledge that the Trustee and, to the extent the Trustee was directed by the Committee, the Committee Defendants, were causing the Plan to purchase Ritchie Trucking stock for more than fair market value. Defendants Scharton and Bruce Lackey failed to take any action to remedy each other's breaches, the breaches of the Trustee, or the breaches of the Committee Defendants. By failing to do so, Defendants Bruce Lackey and Cole Scharton violated ERISA § 405(a)(3) and are liable for these breaches.

*Co-Fiduciary Liability of the Committee Defendants and the Board Defendants Pursuant to ERISA § 405(a)(1)-(3)*

156.    The Committee Defendants violated ERISA § 405(a)(1)-(3) when acting as a Committee because: (1) they each participated knowingly in the actions taken as a Committee, knew or were reckless in not knowing it was a breach; (2) failed to fulfill their duties as members of the Committee set forth in the Plan Document; and (3) had knowledge of those breaches and made no apparent efforts to remedy the breach. As such, each of the Committee Defendants is liable for the breaches of the other members of the committee pursuant to ERISA § 405(a)(1)-(3).

157.    The Director Defendants violated ERISA § 405(a)(1)-(3) when they acted as a Board because: (1) they each participated knowingly in the actions taken as a board, knew or were reckless in not knowing it was a breach; (2) failed to

fulfill their duties as members of the Board of Directors set forth in the Plan Document; and (3) had knowledge of those breaches and made no apparent efforts to remedy the breach. As such, each of the Director Defendants is liable for the breaches of the other members of the committee pursuant to ERISA § 405(a)(1)-(3).

## COUNT VIII
**Violation of ERISA § 410, 29 U.S.C. § 1110 and Breach of Fiduciary Duty under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) against Defendant Paredes, the Director Defendants, the Committee Defendants, and Defendant Ritchie Holdings**

158.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

159.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy." As Part IV of ERISA includes ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105 and 1106, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA § 410(a), unless there is an exception or exemption. No such exception or exemption is applicable here.

160.    The Department of Labor Regulations promulgated under ERISA § 410, 29 C.F.R. § 2509.75-4, renders "void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because it would have "the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."

161.    ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate

equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

162.   For a 100% ESOP-owned company, a provision requiring indemnity by the ESOP-owned company is treated as an indemnity provision by the Plan because it effectively requires ESOP participants to pay for the costs of the breaching fiduciaries' liability. Ritchie Holdings is a 100% ESOP-owned company.

**Purported Indemnification Provisions in the "Plan Document"**

163.   Section 18.06(A) of the Plan Document provides that "the Employer," which is defined as Ritchie Trucking Services Holdings, Inc., "agrees to indemnify, defend and hold harmless each present and future Administrator, members of the Committee, and Trustee, and their employees, and all duly authorized agents, both individually and collectively, to the fullest extent permitted by law, against any liabilities whatsoever with the administration of this Plan, and for any expenses or losses, including, without limitation, attorneys' fees reasonably arising out of, any claims, demands, suits, actions or proceedings in which the indemnified party may be involved (other than in the capacity of Participant or Beneficiary), for which they may become liable as a result of any such actions or inactions. Expenses shall include the cost of reasonable settlement made with the view to curtailment of costs of litigation."

164.   Section 18.06(B) of the Plan Document provides that "[t]he provisions of this indemnity section shall not be enforceable against the Employer in the event the indemnified parties' liabilities results, in whole or in part, from any willful misconduct or from a breach of fiduciary responsibility, obligation, or duty under part 4 of subtitle 1 of title I of ERISA" but purports to relieve the Trustee and the members of the Committee from their responsibility or liability for causing the ESOP to engage in prohibited transactions or other violations of ERISA.

165.   From the time of the 2018 Transaction to the present, the members of the Committee included Bruce Lackey and Pam Lackey, who were the Selling Shareholders and/or parties-in-interest in the 2018 Transaction and members of the board of directors.

166.   To the extent that Section 18.06 of the Plan Document attempts to relieve the Trustee of the Plan, members of the Committee, or Defendants Bruce Lackey and Pam Lackey of their responsibility or liability for causing the ESOP to engage in prohibited transactions or other violations of ERISA and either have Ritchie Holdings or the ESOP be responsible for any of these individuals' liability, Section 18.06 is void as against public policy.

**Purported Indemnification Provisions in the Articles of Incorporation**

167.   Section A of Article 6 of the Articles of Incorporation of Ritchie Trucking Services Holdings, Inc. ("the Articles of Incorporation") provides that "[t]he liability of the directors of the corporation for monetary damages shall be eliminated to the fullest extent permissible under California law."

168.   Section B of Article 6 of the Articles of Incorporation provides that "[t]he corporation is authorized to provide indemnification of agents (as defined in section 317 of the California Corporations Code) through bylaw provisions, agreements with agents, vote of shareholders or disinterested directors or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code."

169.   Section 317 of the California Corporations Code defines "agent" to include, among others, "any person who is or was a director, officer, employee or other agent of the corporation."

170.   From the time of the 2018 Transaction to the present, Defendant Cole Scharton has been an employee of Ritchie Holdings.

171.   To the extent that Sections A and/or B of Article 6 of the Articles of Incorporation attempt to relieve the Director Defendants or Defendant Scharton of

their responsibility or liability for breaches of their ERISA fiduciary duties, causing the ESOP to engage in prohibited transactions under ERISA, or other violations of ERISA and either have Ritchie Holdings or the ESOP be responsible for the Director Defendants' or Defendant Scharton's liability or breaches, Sections A and B of Article III are void as against public policy.

172.    To the extent that Defendant Paredes, the Director Defendants, the Committee Defendants, and Ritchie Holdings would agree to any of the above indemnity provisions, which are against public policy under ERISA § 410 (i.e., by accepting its benefits), Defendant Paredes, the Director Defendants, the Committee Defendants, and Ritchie Holdings breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, and (C) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA, in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

173.    Pursuant to ERISA § 410(a), Section 18.06 of the Plan Document and Sections A and B of Article VIII of the Articles of Incorporation should be declared void ab initio and should be reformed to strike or modified accordingly.

174.    Defendant Paredes, the Director Defendants, the Committee Defendants, and Ritchie Holdings should be ordered to disgorge any indemnification payments made by Ritchie Holdings and/or the ESOP, plus interest.

1

**ENTITLEMENT TO RELIEF**

2   175.   By virtue of the violations set forth in the foregoing paragraphs,

3   Plaintiff and the Class are entitled to sue each of the Defendants who are

4   fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on

5   behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for

6   recovery of any losses to the Plan, the recovery of any profits resulting from the

7   breaches of fiduciary duty, and such other equitable or remedial relief as the Court

8   may deem appropriate.

9   176.   By virtue of the violations set forth in the foregoing paragraphs,

10  Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. §

11  1132(a)(3), to sue any of the Defendants for any appropriate equitable relief to

12  redress the wrongs described above.

13

**PRAYER FOR RELIEF**

14  Wherefore, Plaintiff on behalf of himself and the Class, prays that judgment

15  be entered against Defendants on each claim and be awarded the following relief:

16  A.   Declare that Defendants have each breached their fiduciary duties

17  under ERISA;

18  B.   Declare that Defendant Paredes, the Selling Shareholder Defendants,

19  and Defendant Lackey Family Trust have each engaged in prohibited transactions

20  in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b);

21  C.   Enjoin Defendants, and each of them, from further violations of their

22  fiduciary responsibilities, obligations and duties;

23  D.   Remove each of the Defendants as fiduciaries of the ESOP and/or bar

24  each of them from serving as fiduciaries of the ESOP in the future, and appoint a

25  new independent fiduciary to manage the ESOP and order Defendants pay the

26  costs of such independent fiduciary;

27  E.   Order that Defendants found to have breached his/her/its fiduciary

28  duties to the ESOP to jointly and severally restore all the losses resulting from their

1  breaches and disgorge all profits they have made through use of assets of the
2  ESOP;

3      F.      Order that Defendants provide other appropriate equitable relief to the
4  ESOP, including but not limited to, by forfeiting their ESOP accounts, providing
5  an accounting for profits, imposing a constructive trust and/or equitable lien on any
6  funds wrongfully held by any of the Defendants;

7      G.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to
8  the ESOP accounts of the Class can be satisfied by using or transferring any
9  breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to
10  the extent of that fiduciary's liability.

11      H.      Award Plaintiff Imber statutory penalties in the amount of $110 per
12  day, per violation, for the failure to provide each of the requested documents that
13  the Plan Administrator failed to provide or to the extent appropriate a surcharge
14  against the Committee Defendants in an equivalent amount.

15      I.      Declare that any indemnification agreement between the Defendants,
16  or any of them, and Ritchie Holdings or the ESOP violates ERISA § 410, 29
17  U.S.C. § 1110, and is therefore null and void.

18      J.      Order Defendants to reimburse the ESOP or Ritchie Trucking for any
19  money advanced by the ESOP or Ritchie Holdings, respectively, under any
20  indemnification agreement or other instrument between Defendants and the ESOP
21  or Ritchie Holdings;

22      K.      Require Defendants to pay attorneys' fees and costs pursuant to
23  ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and
24  expenses to Plaintiff's counsel on the basis of the common benefit or common fund
25  doctrine out of any money recovered for the Class;

26      L.      Order Defendant Paredes to disgorge any fees he received in
27  conjunction with the 2018 Transaction;

28

1     M.    Order that Defendants and each of them provide other appropriate

2 equitable relief to the Plan, including but not limited to rescission, surcharge,

3 providing an accounting for profits, and imposing a constructive trust and/or

4 equitable lien on any funds wrongfully held by Defendants;

5     N.    Award pre-judgment interest and post-judgment interest; and

6     O.    Award such other and further relief that the Court determines that

7 Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. §

8 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is

9 equitable and just.

Dated: December 30, 2021    Respectfully submitted,

_____

R. Joseph Barton (SBN 212340)
Colin M. Downes (*pro hac vice to be filed*)
BLOCK & LEVITON LLP
1633 Connecticut Ave, N.W., Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockleviton.com
Email: colin@blockleviton.com

Vincent Cheng (SBN 230827)
BLOCK & LEVITON LLP
100 Pine St., Ste. 1250
San Francisco, CA 94111
Telephone: (415) 968-8999
Email: vincent@blockleviton.com

*Attorneys for Plaintiff*