1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRANDON IMBER, individually and on        Case No.  1:22-cv-00004-HBK
     behalf of all others similarly situated,
12                                              ORDER GRANTING PLAINTIFF'S
                    Plaintiff,                  UNOPPOSED MOTION FOR CLASS
13                                              CERTIFICATION FOR THE PURPOSES OF
            v.                                  PRELIMINARY APPROVAL OF THE
14                                              CLASS ACTION SETTLEMENT[1]
     BRUCE LACKEY, PAM LACKEY,
15   LACKEY FAMILY TRUST, COLE                  (Doc. No. 156)
     SCHARTON, THE ADMINISTRATIVE
16   COMMITTEE OF THE PEOPLE                    ORDER GRANTING PLAINTIFF'S MOTION
     BUSINESS EMPLOYEE STOCK                    FOR PRELIMINARY APPROVAL OF
17   OWNERSHIP PLAN, MIGUEL                     CLASS ACTION SETTLEMENT
     PAREDES, RICH ROUSH, DEL
18   THACKER, RICHARD DEYOUNG,                  (Doc. No. 158)
     AND RITCHIE TRUCKING SERVICE
19   HOLDINGS, INC.,

20                  Defendants,

21   and

22   PEOPLE BUSINESS EMPLOYEE
     STOCK OWNERSHIP PLAN,
23

24                  Nominal Defendant.

25

26

27   ─────────────────────
     [1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28   §636(c)(1).  (Doc. No. 130).

Pending before the Court is Plaintiff Brandon Imber's ("Plaintiff" or "Imber") unopposed Motion to for Class Certification[2] (Doc. No. 156)[3] and Motion for Preliminary Settlement Approval (Doc. No. 158). Filed in support are the declarations of proposed class counsel R. Joseph Barton (Doc. Nos. 156-2, 158-2), a copy of the 2023 Form 5500 for The People Business Employee Stock Ownership Plan (Doc. No. 156-3), the declaration of the proposed class representative Brandon Imber (Doc. No. 156-4), the Class Action Settlement Agreement ("Settlement Agreement") (Doc. No. 158-3), and the proposed Class Notice (Doc. No. 158-4). Having considered the moving papers, declarations, attached exhibits, and applicable law, the Court grants the motion to for class certification for the purposes of settlement, and grants the motion for preliminary settlement approval.

**BACKGROUND**

### A. Claims and Proceedings

Plaintiff Brandon Imber ("Imber") filed the present action on December 30, 2021 on behalf of himself and others similarly situated. (Doc. No. 1, "Complaint"). Imber is a former employee of Ritchie Trucking Service, LLC ("Ritchie Trucking"), a subsidiary of Defendant Ritchie Trucking Service Holdings, Inc. (*Id*. ¶ 7), previously owned by Defendants Bruce and Pam Lackey. (*Id*. ¶¶ 52-53). Ritchie Trucking provided services including hauling, last minute delivery, warehousing, distribution, and installation of household appliances. (*Id*. ¶ 54). Pursuant to the Complaint, the largest source of revenue for Ritchie Trucking and its affiliates from 2012 to 2018 was the delivery and installation of appliances for General Electric ("GE"), representing $30-35 million of Ritchie Trucking's approximately $40 million in revenue. (*Id*. ¶ 55). In 2016, GE announced their intention to end existing contracts for delivery and installation of appliances, including with Ritchie Trucking, which ultimately decreased Ritchie Trucking's market share and revenue. (*Id*. ¶¶ 56, 57). After these changes were announced, but before they were effected, Defendants Bruce and Pam Lackey offered to sell Ritchie Trucking to Plaintiff Imber and Greg

---

[2] As noted in Defendants' statement of non-opposition to Plaintiff's motion for class certification, the motion is filed to obtain certification of a class for settlement purposes only. (Doc. No. 160 at 3 (citing Settlement Agreement, at Doc. No. 158-3, 11:10-17).

[3] The Court refers to the page numbers as they appear on the Court's CM/ECF system.

Siemens, Ritchie Trucking's safety director, for $10-12 million.  (*Id*. ¶ 58).  Imber declined, and in 2018 discovered Defendants Bruce and Pam Lackey were planning to sell Ritchie Trucking to an employee stock ownership plan.  (*Id*. ¶ 59).  In the third quarter of 2018, GE notified Ritchie Trucking that their contract would be terminated.  (*Id*. ¶ 62).  On December 31, 2018, Defendant Paredes, as trustee of the ESOP, caused the ESOP to purchase 2,000,000 shares of Ritchie Holdings in exchange for $19,543,000 ("2018 Transaction"). (*Id*. ¶ 64).  Following the 2018 Transaction, Ritchie Trucking lost the GE contract, and its market position deteriorated.  (*Id*. ¶¶ 72-74).

Plaintiff Imber contends that the individually named Defendants – Bruce Lackey, Pam Lackey, Cole Scharton, Richard DeYoung, Rick Roush, and Del Thacker – were executives of Ritchie Holdings and ESOP fiduciaries who were aware of the proposed changes by GE but failed to provide or provided incomplete information to the ESOP's advisors.  (*Id*. ¶¶ 9-17, 60-63, 65-66, 68-69).  Specifically, Plaintiff contends the purchase price was based in part on an unreliable valuation report that did not account for the termination of the GE contract, the need to re-bid for work, and the discussion by Bruce and Pam Lackey in 2017 regarding selling Ritchie Trucking for $10-12 million, well below the 2018 Transaction purchase price of $19,543,000.  (*Id*. ¶ 67).  Moreover, Plaintiff asserts that Defendant Paredes, as the ESOP's Trustee, failed to conduct a prudent investigation as to the purchase price, including risks to Ritchie Holdings' existing contracts, the reliability of financial projections, and previous efforts to sell the company.  (*Id*. ¶ 71).  As a result of the failure to disclose information, and the Trustee's failure to perform adequate due diligence, Plaintiff claims the ESOP paid more than fair market value for Ritchie Holdings stock in the 2018 Transaction.  (*Id*. ¶ 67).  Moreover, Plaintiff asserts that after the financial position of Ritchie Trucking declined after the 2018 Transaction, neither the Trustee nor the individual ESOP fiduciaries undertook an investigation or any corrective action to remedy the ESOP's overpayment for Ritchie Trucking stock.  (*Id*. ¶¶ 72-77).

The Complaint asserts eight claims against Defendants[4] for their respective roles in

---

[4] As clarified in the Motion for Preliminary Settlement Approval, the "Trustee" is defined as Defendant Paredes, the "Committee Defendants" consist of Bruce Lackey, Pam Lackey, and Cole Scharton, the

alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., in connection with the December 31, 2018 sale of 2,000,000 shares of common stock of Ritchie Trucking Service Holdings, Inc. ("Ritchie Holdings") to the People Business Employee Stock Ownership Plan ("ESOP") for $19,543,000 (the "2018 Transaction").

Count I: Engaging in prohibited transaction forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), against Defendant Paredes, the Selling Shareholder Defendants and the Committee Defendants. (*Id.* ¶¶ 83-92).

Count II: Engaging in prohibited transaction forbidden by ERISA § 406(b), 29 U.S.C. § 1106(a)-(b), against Selling Shareholder Defendants. (*Id.* ¶¶ 93-101).

Count III: Breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against Defendant Paredes and the Committee Defendants. (*Id.* ¶¶ 102-114).

Count IV: Breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against Defendant Paredes and the Committee Defendants to remedy or correct the 2018 Transaction. (*Id.* ¶¶ 115-121).

Count V: Failure to disclose information required by ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), against the Committee Defendants on behalf of Plaintiff Brandon Imber individually.[5] (*Id.* ¶¶ 122-135).

Count VI: Breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against the Director Defendants for failure to monitor the Trustee and Committee Defendants. (*Id.* ¶¶ 136-146).

Count VII: Co-fiduciary liability under ERISA § 405, 29 U.S.C. § 1105, against the

"Director Defendants" include Defendants DeYoung, Roush and Thacker, and the "Selling Shareholders" are Bruce Lackey, Pam Lackey, and the Lackey Family Trust. (Doc. No. 158-1 at 10).

[5] Count 5 is an individual claim brought by Plaintiff Imber against the Plan Administrator for failing to provide documents pursuant to his written request under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) and § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). (Doc. No. 1 at ¶ 122-135). Plaintiff maintains, without opposition from Defendants, that this claim is not brought on behalf of the Class and is not released by the Settlement Agreement. (Doc. No. 156-1 at 14 n.5; Doc. No. 158-1 at 10 n.1).

Director Defendants, Committee Defendants, and Defendant Paredes.  (*Id*. ¶¶ 147-157).

Count VIII: Violation of ERISA § 410, 29 U.S.C. § 1110 and breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against Defendant Paredes, the Director Defendants, the Committee Defendants, and Defendant Ritchie Holdings.  (*Id*. ¶¶ 158-174).

Plaintiff filed the Complaint on December 30, 2021.  (Doc. No. 1).  Subsequently, Defendant Paredes, the Director Defendants, and Defendant Lackey Family Trust filed motions to dismiss various claims.  (Doc. Nos. 40, 42, 48).  All motions to dismiss are fully briefed and pending before the Court.  (*See generally* docket).  Defendants Bruce Lackey, Pam Lackey, Cole Scharton, The Administrative Committee of the People Business Employee Stock Ownership Plan, and Ritchie Trucking Service Holdings, Inc. filed Answers to the Complaint.  (Doc Nos. 51, 54, 63).  On September 20, 2022, the Court entered a limited discovery order to meet the particular circumstances of the case and assist the parties in reaching their stated goal to attend mediation.  (Doc. No. 80).  After consent by all Parties, this matter was reassigned to the undersigned on December 17, 2024.  (Doc. No. 130).  Between January 2023 and March 2025, the parties participated in both mediation and voluntary dispute resolution proceedings and eventually reached an agreement in March 2025.  (*See generally* Doc. Nos. 89-153; Doc No. 158-2 at 3 ¶10).  On April 9, 2025 Plaintiff filed a Notice of Settlement advising the Court that all parties executed a fully signed Class Action Settlement Agreement and Supplemental Confidential Class Action Settlement Agreement.  (Doc. No. 153).

On May 21, 2025, Plaintiff filed motions for conditional class certification and for preliminary settlement approval.  (Doc. Nos. 156, 158).   On June 4, 2025, Defendants filed a statement of non-opposition to the certification of the class for settlement purposes only (Doc. No. 160), and a response and statement of non-opposition to the motion for preliminary approval of the class settlement, aside from the single request that the Court consider a proposed modification to the Class Notice language (Doc. No. 159 at 3).  Subsequently, Plaintiff filed a reply, Defendants to file a limited surreply, and Plaintiff was permitted to respond to the limited surreply in an attempt to address the ongoing dispute as to the wording of one sentence in the

Class Notice. (Doc. Nos. 161, 165, 169, 174). On August 26, 2025, the Parties came to an agreement regarding the disputed Class Notice language, described *infra*. The matter is deemed submitted for consideration.

### B. Proposed Settlement Terms

#### 1. Settlement Class

The proposed settlement class is identified as:

> All participants in the ESOP from December 31, 2018, or any time thereafter until December 31, 2024 (unless the participant terminated without vesting) and those participants' beneficiaries other than the Excluded Persons.
>
> "Excluded Persons" means the following persons who are excluded from the Class: (a) Defendants; (b) any fiduciary of the Plan; (c) the officers and directors of Ritchie Trucking or of any entity in which the individual Defendants have a controlling interest; (d) immediate family members of any of the foregoing excluded persons; and (e) the legal representatives, successors, and assigns of any such excluded persons.

(Doc. No. 158-3 at 7 ¶ I(H), (W); Doc. No. 156-1 at 11).

The estimated class size is at least 200 class members. (Doc. No. 156-1 at 20). Class members can file objections to the settlement, but cannot opt-out because, as indicated herein, for the purposes of settlement the class is certified as a non-opt-out class. There is no deadline for objections in the Settlement Agreement, but Class Counsel proposes that any objections be filed within 60 days after Notice is sent to the class members. (Doc. No. 158 at 3).

#### 2. Releases

Pursuant to the Settlement Agreement:

> 1.    **Release of Defendants by Plaintiff and the Class.** Plaintiff and the Class Members (including their heirs, executors, administrators, successors, and assigns), solely in their capacity as participants in the Plan or as beneficiaries of Class Members who are participants in the Plan, fully and finally release Defendants, and each of them and, as applicable depending on whether such releasee is an individual or an entity, including each Defendant's past and present officers, directors, shareholders, members, affiliates, independent contractors, agents, insurers, insurance administrators, attorneys, fiduciaries, trustees, heirs, administrators, executors, devisees, conservators, representatives, parents, subsidiaries, predecessors-in-interest, successors-in-interest, trusts, spouses, and assigns, from any and all claims, or causes of action (including any claims for costs, attorneys' fees and/or expenses incurred by Plaintiff

or his counsel in this Action as to the Class Claims), whether in law or in equity, whether known or unknown, whether fixed or contingent, that Plaintiff or the Class Members have prior to the date of the date of the execution of this Settlement Agreement that are asserted in the Class Claims, or are based on or arise out of the same factual predicate alleged in the Class Claims, (the "Settled Class Claims").

2.      **Release of Plaintiff and the Class by Defendants.** Defendants fully and finally release Plaintiff, each Class Member, Plaintiff's Counsel (and any of its attorneys) and Class Counsel from any and all claims or causes of action, whether in law or in equity, whether known or unknown, that Defendants have or have had against Plaintiff, each Class Member, Plaintiff's Counsel (and any attorneys of those firms) or Class Counsel (a) related to the correctness of the amount in any of the Class Member's Plan accounts (as reflected in the data provided by Defendants) or (b) any claims, including for attorneys' fees, costs, expenses, sanctions, that relate to the filing, commencement, prosecution, or settlement of this Action as to the Class Claims.

3.      **Conditional Release by the Independent Fiduciary**. Subject to the determination of an Independent Fiduciary [] that the Settlement is consistent with Prohibited Transaction Exemption 2003-39, the Independent Fiduciary will approve the release of the Settled Class Claims [] and will issue a release of the Settled Class Claims on behalf of the Plan (which release will include a Waiver of California Civil Code Section 1542 []). The release approved by the Independent Fiduciary shall not, however, include a release of claims by any person who is not a member of the Class, including claims with respect to any alleged loss such person may have suffered to his or her Plan account.

(Doc. No. 158-3 at 44-45 ¶ XIV(1)-(3)). In addition, the Parties provide a release of all known and unknown claims under California Civil Code § 1542:

The Parties on behalf of themselves and all persons and entities on whose behalf they are providing the releases herein, acknowledge and understand that there is a risk that, subsequent to the execution of this Agreement, they may accrue, obtain, incur, suffer, or sustain claims which in some conceivable way are based on or arise out of the same factual predicate alleged in the Class Claims and that such claims are unanticipated at the time this Agreement is signed, or are not presently capable of being ascertained. The Parties further acknowledge that there is a risk that any claims as are known or should be known may become more serious than they now expect or anticipate. Nevertheless, to the extent permitted by California law, the Parties hereby expressly waive all rights they may have in such unknown consequences or results. To the extent permitted by California law, the Parties acknowledge that they have had the benefit of and the opportunity to consult with their counsel, understand the import of Civil Code section 1542, and expressly waive the protection of Civil Code section 1542, which provides as

1  follows:

2      A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
       THAT THE CREDITOR OR RELEASING PARTY DOES NOT
3      KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
       THE TIME OF EXECUTING THE RELEASE AND THAT, IF
4      KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
       AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
5      OR RELEASED PARTY.

6  (*Id*. at 45-46 ¶ XIV(4)).  Finally, the Parties are expressly not releasing (1) claims to enforce the

7  Settlement Agreement, (2) Plaintiff's individual claim at Count V, and (3) any claim for

8  attorneys' fees, expenses, or costs incurred in bringing Count V.  (*Id*. at 46 ¶ XIV(5)).

9          **3.  Payment Terms**

10             **a.  Cash Settlement Fund**

11         The Settlement requires Defendants to pay $485,000.00, plus any earnings and interest

12 accrued thereon, into a Cash Settlement Fund which will be distributed to class members in

13 accordance with their ESOP accounts minus any Court-approved deductions and expenses,

14 including attorneys' fees, the service award for the class representative, estimated taxes on

15 income earned on the Cash Settlement Fund and related costs, costs related to the Class Notice,

16 and costs incurred by the Settlement Administrator.  (Doc. No. 158-3 at 18-19 ¶ IV(A)(1), ¶

17 V(A)).  Pursuant to Class Counsel's Proposed Plan of Allocation, each class member's "General

18 Account shall be credited with an amount of cash equal to the product of the total amount

19 allocated and Payee Class Member's Pro Rata Coefficient."[6]  (Doc. No. 158-3 at 71).

20         Not later than 14 days after the Net Cash Settlement Fund proceeds are transferred to the

21 Trust, Ritchie Trucking (or its successor) will ensure each class member that is eligible to receive

22 an immediate distribution (or rollover) receives an election distribution packet.  (Doc. No. 158-3

23 at 23-24 ¶ V(A)(5)).  For all other class members who receive an allocation from the Net Cash

24 Settlement Fund, who are either not eligible to receive an immediate distribution or do not make a

25 timely distribution election, their proceeds shall be allocated to that class member's individual

26 _____

27 [6] "Payee Class Member" is defined as a class member with an immediate right to receive benefits through
   the ESOP.  (Doc. No. 158-3 at 69).  "Pro rata Coefficient" is defined as a Payee Class Member's credited
28 balance divided by the sum of the credited balances of all Payee Class members.  (*Id*. at 70).

general account under the ESOP.  (*Id*.).

### b. Stock Settlement

The Settlement requires that the principal balance of the ESOP-related debt will be reduced by $1.4 million; and as a result of this loan modification, 115,000 shares of Ritchie Trucking Employer Stock ("Employer Stock") held in ESOP Suspense Account will be released and allocated to the ESOP accounts of class members pursuant to a Court-approved plan of allocation.  (Doc. No. 158-3 at 19-21 ¶ IV(B), ¶ V(B)).  Pursuant to Class Counsel's Proposed Plan of Allocation, each class member's ESOP account "shall be credited with a number of shares equal to the product of the total number of shares released as a result of the Loan Modification and the Payee Class Member's Pro Rata Coefficient."  (Doc. No. 158-3 at 71).

After final approval of the settlement becoming non-appealable, according to the terms of the Settlement Agreement, Ritchie Trucking will make a distribution or rollover as elected by each class member eligible for immediate distribution; and for all other class members who receive an allocation from the Stock Settlement but are not eligible to receive an immediate distribution or do not make a timely distribution election, their proceeds will be held in that class member's individual account under the ESOP.  (*Id*.)  If they do not already have an ESOP account, one will be established for them.  (*Id*. at 28-29 ¶ V(B)(3)(b)).  For the purposes of determining fair market value of stock to be liquidated for class members eligible for immediate distribution, the valuation excludes consideration of expenses borne by Ritchie trucking in the litigation or settlement of this matter.  (*Id*. at 27-28 ¶ V(B)(3)(a)(2)).  Finally, the Plan Administrator and/or Trustee will provide Class Counsel with a copy of any valuation reports regarding valuation of Ritchie Trucking stock until the final approval order becomes non-appealable.  (*Id*. at 48-49 ¶ XVII(3)).

### c. Defendants Will Bear Costs

Pursuant to the Settlement agreement, aside from the costs and expenses of the Settlement Administrator, including the costs of the Class Notice, Defendant Ritchie Trucking will bear all costs of administration of the Settlement.  (*Id*. at 29 ¶ V(C).  No fees, expenses, costs, or other charges will be imposed on class members to have their proceeds from the Settlement deposited

1  into ESOP accounts or otherwise related to the administration of the Settlement, or costs of any

2  Independent Fiduciary.  (*Id*.).

3  ### d.  Attorney's Fees and Costs

4  Class Counsel will file a motion seeking the Court's approval for its attorneys' fees and

5  costs which will be determined by the Court pursuant to the final approval order.  (Doc. No. 158-

6  1 at 21-22; Doc. No. 158-3 at 35-36 ¶ VIII(1)).  Pursuant to the Settlement Agreement, any award

7  of attorneys' fees, costs, and expenses will be paid solely from the Cash Settlement Fund.  (*Id*.).

8  Defendant will take no position as to Class Counsel's application for attorneys' fees, costs, and

9  expenses so long as the amount, combined with any award to the class representative, does not

10  exceed the amount in the Cash Settlement Fund.  (Doc. No. 158-3 at 36 ¶ VIII(2)).  Defendants

11  will bear their own attorneys' fees, expenses, and costs.  (*Id*. at 36 ¶ VIII(6)).

12  ### e.  Class Representative Service Award

13  Imber, the named Plaintiff, will seek a service award of up to $5,000.00.  (Doc. No. 158-1

14  at 24-25; Doc. No. 158-3 at 35-36 ¶ VIII(1)).  Any service award will be paid solely from the

15  Cash Settlement Fund.  (*Id*.).  Defendant will take no position on the service award if it does not

16  exceed $5,000.00.  (*Id*. at 36 ¶ VIII(2)).

17  ### f.  Settlement Administrator

18  Class Counsel asks the Court to appoint Analytics Consulting LLC as Settlement

19  Administrator.  (Doc. No. 171).  After a competitive bidding process, Analytics Consulting LLC

20  responded with the lowest bid.  (*Id*.).  The total estimated fees and costs Analytics Consulting

21  LLC's bid is $5,449.00.  (Doc. No. 171-4 at 2).  At the direction of Class Counsel, the costs and

22  expenses incurred by the Settlement Administrator will be paid from the Cash Settlement Fund.

23  (Doc. No. 158-3 at 24 ¶ V(A)(1)).

24  ### g.  Distribution of Residual Funds

25  Pursuant to the Proposed Plan of Allocation, in the event money remains in the Net Cash

26  Settlement Account after distribution is completed and after all taxes and other expenses have

27  been pain, those residual amounts will be distributed to a Court-approved non-sectarian, non-

28  profit 501(c)(3) charitable organization recommended by Class Counsel.  (Doc. No. 158-3 at 71).

1

### h.  Notice

2      Notice will be provided to each individual participant class member, and each beneficiary

3  class member, by email, or by first class U.S. Mail if an email address is unavailable.  (Doc. No.

4  158-1 at 28; Doc. No. 158-3 at 16 ¶ III(4)).  In the event that a Notice sent by email is returned as

5  undeliverable, the Notice will be re-sent by U.S. Mail.  (Doc. No. 158-1 at 28; Doc. No. 158-3 at

6  17 ¶ III(7)).  If a Notice sent by U.S. Mail is returned as undeliverable, Class Counsel and/or the

7  Settlement Administrator will make reasonable efforts to obtain a valid mailing address and

8  resend the Class Notice by U.S. Mail.  (Doc. No. 158-3 at 17 ¶ III(7)).  Notice will be posted on a

9  dedicated website maintained by the Settlement Administrator, and the Settlement Administrator

10  will maintain and staff a toll-freephone number, for at least six months after distribution of

11  settlement funds is made to class members.  (*Id*. at 17 ¶ III(4), 34 VII(2)(f)).  Within 30 days after

12  Notice is sent, the Settlement Administrator will file a declaration with the Court confirming that

13  Notice and related information was sent in accordance with this Order.  (*Id*. at 17 ¶ III(10)).

### APPLICABLE LAW

14

15      "Courts reviewing class action settlements must ensure[] that unnamed class members are

16  protected from unjust or unfair settlements affecting their rights, while also accounting for the

17  strong judicial policy that favors settlements, particularly where complex class action litigation is

18  concerned."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and

19  citations omitted).  Where parties reach a settlement agreement prior to class certification, "courts

20  must peruse the proposed compromise to ratify both the propriety of the certification and the

21  fairness of the settlement."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

22      The Court first determines whether, in its discretion, a class action may be certified.  *Id.;*

23  *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012).  Exercise of this

24  discretion "demand[s] undiluted, even heightened, attention in the settlement context."  *Amchem*

25  *Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  This level of attention "is of vital importance,

26  for a court asked to certify a settlement class will lack the opportunity, present when a case is

27  litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*

28      To obtain class certification, the plaintiff must affirmatively demonstrate that the class

meets the requirements of Rule 23.  *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 350 (2011).  The

plaintiff must satisfy the four prerequisites identified in Rule 23(a), as well as one of the three

subdivisions of Rule 23(b).  *Amchem Prods., Inc.,* 521 U.S. at 614.  "The four requirements

of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and

'adequacy of representation' (or just 'adequacy'), respectively."  *United Steel, Paper & Forestry,*

*Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips*

*Co.,* 593 F.3d 802, 806 (9th Cir. 2010).  Under Rule 23(b), a class action may be maintained if

Rule 23(a) is satisfied and (1) prosecuting separate actions against individual class members

would create incompatible standards of conduct for the defendant or prejudice individual class

members not parties to the action; or (2) the defendant has acted or refused to act on grounds that

apply generally to the class, making appropriate injunctive or declaratory relief with respect to the

class as a whole; or (3) common questions of law or fact predominate over questions affecting

individual members and that a class action is superior to other available methods for fairly and

efficiently adjudicating the action.  Fed. R. Civ. P. 23(b)(1-3).

     Second, after determining that a class may be certified, the district court carefully

considers "whether a proposed settlement is fundamentally fair, adequate, and reasonable,"

recognizing that "[i]t is the settlement taken as a whole, rather than the individual component

parts, that must be examined for overall fairness."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1026 (9th Cir. 1998) (citations omitted); *see* Fed. R. Civ. P. 23(e)(2).  Where, as here, a

settlement has been reached prior to formal class certification, "a higher standard of fairness"

applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the

need for additional protections when the settlement is not negotiated by a court designated class

representative."  *Id.* at 1026; *see Campbell*, 951 F.3d at 1122.  Although the court's role in

reviewing a proposed settlement is critical, it is also a limited one.  The court does not have the

ability to "'delete, modify or substitute certain provisions.'  The settlement must stand or fall in

its entirety."  *Hanlon*, 150 F.3d at 1026 (citation omitted).  The court may, however, voice its

reservations about the proposed settlement and set conditions that, if satisfied, might lead the

court to approve it.  Manual for Complex Litigation (Fourth) at 309, § 21.61 (2004).

1    When evaluating fairness, adequacy, and reasonableness at the final approval stage, the

2    court will consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk,

3    expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

4    action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

5    completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the

6    presence of a governmental participant; and (8) the reaction of the class members to the proposed

7    settlement. *Kim v. Allison*, 8 F.4th 1178 (9th Cir. 2021).

8    Because some of these factors cannot be fully assessed until the Court conducts the final

9    approval hearing, however, preliminary approval of a settlement and notice to the proposed class

10   are appropriate if: "[1] the proposed settlement appears to be the product of serious, informed,

11   non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

12   preferential treatment to class representatives or segments of the class, and [4] falls with

13   the range of possible approval . . . ." *Criswell v. Boudreaux*, 2021 WL 4461640, at *3 (E.D. Cal.

14   Sept. 29, 2021) (citations omitted).

## ANALYSIS

### A.  Rule 23(a) Requirements

17   Although the parties in this case have agreed to certify the proposed class solely for

18   purposes of the settlement, "the court must nevertheless undertake the Rule 23 inquiry

19   independently, both at this stage and at the later fairness hearing." *Van Lith v. iHeartMedia +*

20   *Ent., Inc.*, 2017 WL 1064662, at *6 (E.D. Cal. Mar. 20, 2017) (quotation and citations omitted).

21   The Court notes that Plaintiff seeks class certification for all claims in the Complaint aside from

22   Count V which is an individual claim for failure to provide documents in response to his request;

23   thus, the Court's determination regarding class certification is limited to the remaining seven

24   claims in the Complaint arising out of the 2018 Transaction.  (Doc. No. 156-1 at 11).

25   The Court addresses each of the Rule 23(a) and Rule 23(b) factors in turn.

### 1.  Numerosity

27   The numerosity prerequisite is met if "the class is so numerous that joinder of all members

28   is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not mean 'impossibility,'

but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Here, Plaintiff estimates at least 200 class members. In support of this estimate, Plaintiff submits evidence that there were 79 active participants in the ESOP at the end of 2023 based on the most recent annual filing, up to 94 ESOP participants who terminated with vested benefits based on Form 5500s between 2018 and 2023, and "series" of likely beneficiaries of the participant class members. (Doc. No. 156-1 at 17; Doc. No. 156-2 at 7 ¶19; Doc. No. 156-3). Defendants do not contest that Plaintiffs meet the numerosity requirement. (*See* Doc. No. 160). The proposed class is sufficiently numerous. *See Boyd v. Bank of Am. Corp*. 300 F.R.D. 431, 437 (C.D. Cal. Jun. 27, 2014) (the numerosity requirement is "presumptively satisfied" if "there are at least forty members") (citing *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 456 (C.D. Cal. 2012)). Thus, the numerosity requirement is met.

### 2. Commonality

The commonality prerequisite is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common question that resolves a central issue will be sufficient. *Castillo v. Bank of America, NA*, 780 F.3d 723, 728 (9th Cir. 2020). The key inquiry is whether the common contention is of "a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.*; *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).

Plaintiff identifies multiple common questions of law and fact that are capable of resolution on a class-wide basis, including, but not limited to, whether the Trustee and Committee Defendants caused the ESOP to engage in a prohibited transaction under ERISA and whether the Selling Shareholders knowingly participated in the 2018 Transaction; whether the ESOP purchased Ritchie stock for more than adequate consideration in the 2018 Transaction; whether the Selling Shareholder Defendants engaged in a transaction prohibited under ERISA; whether the Trustee and Committee Defendants breached their fiduciary duties by causing the ESOP to engage in the 2018 Transaction for more than fair market value, and failing to correct or remedy

1   the 2018 Transaction; whether the Director Defendants breached their fiduciary duties under

2   ERISA by failing to appropriate monitor the Trustee and the Committee Defendants; whether

3   certain Defendants are liable for the other Defendants' breach of fiduciary duties; and whether the

4   ESOP's indemnity provision is void under ERISA.  (Doc. No. 156-1 at 19).  These claims address

5   conduct by Defendants that is capable of class-wide resolution because they do not allege injury

6   to any individual ESOP participant, "but rather on how the Defendants' conduct affected the pool

7   of assets that make up the [ESOP]."  *Hurtado v. Rainbow Disposal Co.*, 2019 WL 1771797, at \*7

8   (C.D. Cal. April 22, 2019); *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 7081190, at \*4

9   (C.D. Cal. Aug. 6, 2021) (finding commonality satisfied as the resolution of the case "will turn on

10  several questions common to all class members" including whether defendants breached fiduciary

11  duties and whether a prohibited transaction occurred).  Defendant does not dispute that

12  commonality is satisfied.  (*See* Doc. No. 160).  For these reasons, the Court finds commonality is

13  satisfied.

14          **3.   Typicality**

15          Typicality requires the plaintiff's claims be typical of those of class.  Fed. R. Civ. P.

16  23(a)(3).  A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of

17  absent class members; they need not be substantially identical."  *Castillo*, 980 F.3d at 729

18  (quoting *Hanlon*, 150 F.3d at 1020).  Typicality requires that a representative plaintiff "possess

19  the same interest and suffer the same injury as the class members."  *Gen. Tel. Co. of the Sw. v.*

20  *Falcon*, 457 U.S. 147, 156 (1982).

21          Here, "Defendants' alleged acts and omissions were not directed to an individual but

22  rather relate to the [ESOP] as a whole, such that the claims of Plaintiff and the unnamed class

23  members all arise from the same course of conduct."  *Gamino v. KPC Healthcare Holdings, Inc.*,

24  2021 WL 7081190, at (C.D. Cal. Aug. 6, 2021) (granting certification in ERISA class action

25  asserting violations related to an ESOP transaction); *In re First American Corp. Erisa Litigation*,

26  258 F.R.D. 610, 619 (C.D. Cal. 2009) ("If the Plan Participants' claim is successful, all class

27  members suffered the same injury through the same course of conduct.  None of the facts or legal

28  claims are unique to the named plaintiffs.  This action is brought on behalf of the Plan as a whole,

1    not individual claimants.  If recovery is received and paid to the Plan, it is the responsibility of the

2    Plan fiduciaries to determine the manner in which such recovery will be applied.  Accordingly,

3    the typicality requirement is satisfied.").  Plaintiff seeks to bring claims on behalf of the ESOP as

4    a whole alleging the same injury through the same course of Defendants' conduct related to a

5    single 2018 Transaction; and nothing in the record before indicates that Plaintiff suffered any

6    injury aside from or in addition to the alleged misconduct that uniformly affected all ESOP

7    participants.  Defendant does not dispute that typicality is met.  (*See* Doc. No. 160).  Thus, the

8    Court finds typicality is satisfied.

9                    **4.  Adequacy of Representation**

10            Adequacy of representation requires that the class representative be able to "fairly and

11    adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is adequate

12    if the plaintiff and class counsel do not have any conflicts of interest with any other class

13    members and will prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at

14    1020.  Adequacy is also met when the class representative "possess[es] the same interests and

15    suffer[s] the same injury as the class members."  *Amchem Prod., Inc.*, 521 U.S. at 625-26

16    (citations and quotation marks omitted).  Here, there does not appear to be any conflict of interest

17    between Plaintiff and the purported class members.  Additionally, as outlined in detail above,

18    Plaintiff has the same interests and suffered the same injury as the purported class members.

19    Plaintiff represents that he has vigorously prosecuted this case even before litigation was filed,

20    including contacting an attorney regarding his concerns about the ESOP, requesting documents

21    from the administrator of the ESOP and providing information for the Complaint, reviewing the

22    Complaint, authorizing the filing of the Complaint, participating in mediation, and actively

23    monitoring the progress of the case and settlement.  (Doc. No. 156-1 at 25, Doc. No. 156-4).

24    Finally, Plaintiff attests that he understands the duties of class representative.  (Doc. No. 156-4 at

25    6).

26            Class counsel has extensive experience in employee benefits class actions, including

27    numerous ERISA class actions, both generally and specifically challenging ESOP transactions

28    (*See* Doc. No. 156-1 at 26; Doc. No. 156-2 at 2-4) (listing ERISA cases, including those

1  involving ESOPs, where Plaintiff's counsel served as lead or co-counsel).  There is no evidence

2  of any potential conflicts, and Plaintiff's counsel has prosecuted the action swiftly on behalf of

3  the class.  (*See* docket).

4        Defendant does not dispute that adequacy of representation is met.  (*See* Doc. No. 160).

5  Accordingly, Plaintiff and his counsel appear to be adequate representatives of the proposed class.

6        Thus, Plaintiff has met all the requirements of Rule 23(a).

7      **B. Rule 23(b) Requirements**

8        In addition to satisfying Rule 23(a)'s prerequisites, a plaintiff seeking class certification

9  must show that the action is maintainable under one of the three subsections of Rule 23(b).  *In re*

10  *Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 558 (9th Cir. 2019).  Here, Plaintiff

11  contends the claims meet the requirements of any of the three prongs under Rule 23(b), but he

12  seeks certification under Rule 23(b)(3) only if the court concludes certification is not proper

13  under Rule 23(b)(1) or 23(b)(2).  (Doc. No. 156-1 at 27-34).  In contrast to Rule 23(b)(3), Rule

14  23(b)(1) and 23(b)(2) do not require that potential class members be notified or be afforded the

15  opportunity to opt out of the class. *See Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

16  Defendants do not oppose certification under any subsection of Rule 23(b).  (*See* Doc. No. 160).

17        "Most ERISA class actions are certified under Rule 23(b)(1)."  *Kanawi v. Bechtel Corp.*,

18  254 F.R.D. 102, 111-12 (N.D. Cal. 2008) ("ERISA [fiduciary litigation … presents a

19  paradigmatic example of a (b)(1) class."); *see also Wit v. United Behavioral Health*, 317 F.R.D.

20  106, 132-33 (N.D. Cal. 2016) ("Certification under Rule 23(b)(1) is particularly appropriate in

21  cases involving ERISA fiduciaries who must apply uniform standards to a large number of

22  beneficiaries.").  A class action may be maintained under Rule 23(b)(1) if

23        prosecuting separate actions by or against individual class members
      would create a risk of: (A) inconsistent or varying adjudications with

24        respect to individual class members that would establish
      incompatible standards of conduct for the party opposing the class;

25        or (B) adjudications with respect to individual class members that, as
      a practical matter, would be dispositive of the interests of the other

26        members not parties to the individual adjudications or would
      substantially impair or impede their ability to protect their interests.

27

28  Fed. R. Civ. P. 23(b)(1); *see also Kanawi*, 254 F.R.D. at 111 ("Rule 23(b)(1)(A) considers

1  possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class

2  members."). Here, Plaintiff argues class certification is appropriate under both 23(b)(1)(A) and

3  23(b)(1)(B). (Doc. No. 156-1 at 27-28); *see Ramirez v. Ampam Parks Mechanical, Inc.*, 2025

4  WL 1090186, at * (C.D. Cal. Mar. 18, 2025) ("Courts commonly certify ERISA class actions

5  under both 23(b)(1)(A) and 23(b)(1)(B).") (citing *Klawonn v. Bd. of Directors for Motion Picture*

6  *Indus. Pension Plans*, 2024 WL 653398, at *7 (C.D. Cal. Jan. 18, 2024).

7  "Rule 23(b)(1)(A) comes into play when a party is obligated by law to treat members of a

8  class in a like manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008)

9  (granting certification under Rule 23(b)(1) because "ERISA requires plan administrators to treat

10  all similarly situated participants in a consistent manner") (citing *Amchem Products Inc. v.*

11  *Windsor*, 521 U.S. 591, 614 (1997)); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965

12  (9th Cir. 2016) ("Rule 23(b)(1)(A) prevents the prosecution of separate actions that would create

13  the risk of 'inconsistent or varying adjudications ... that would establish incompatible standards of

14  conduct for the party opposing the class.'"). Plaintiff argues certification is appropriate under

15  Rule 23(b)(1)(A) because separate lawsuits "have the potential for conflicting decisions that

16  would make uniform administration of the Plan impossible. Because Defendants are fiduciaries

17  to the Plan in which all Class Members are participants or beneficiaries, varying or inconsistent

18  adjudications regarding the rights of participants under the Plan would establish incompatible

19  standards of conduct." (Doc. No. 156-1 at 28). The Court agrees. Absent class certification,

20  individual ESOP participants could obtain inconsistent dispositions, resulting in "incompatible

21  standards of conduct" for Defendants. *See* Fed. R. Civ. P. 23(b)(1)(A); *Hurtado*, 2019 WL

22  1771797, at *10 ("Defendants' liability or lack thereof is likely dependent on judicial

23  interpretation of the parties' rights, powers, and obligations pursuant to the ESOP. Conflicting

24  interpretations by separate tribunals could result in countervailing directives to the ESOP

25  fiduciaries."). Accordingly, the proposed class satisfies the requirements of Rule 23(b)(1)(A).

26  Rule 23(b)(1)(B) "is concerned only with the rights of unnamed class members, not with

27  the rights of [the defendants]." *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Central Distr. Of*

28  *Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-

34 (1999) ("Rule 23(b)(1)(B) speaks from a vantage point within the class, [from which the Advisory Committee] spied out situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests…. Classic examples of such a risk of impairment may, for example, be found in … actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries."); *In re Ikon Office Sols, Inc*., 191 F.R.D. 457, 466 (E.D. Pa. 2000) ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.").  Here, the asserted claims relate to a single ESOP transaction, and any decision regarding those allegations applies to the ESOP as a whole and affects the rights and interests of all ESOP participants.  Should the action proceed outside of a class context, actions by individual ESOP participants would impair the ability of other participants to protect their interests.  *See Ramirez*, 2025 WL 1090186, at *7 (finding certification appropriate under Rule 23(b)(1)(B) because "the Court's adjudication of issues related to ERISA requirements 'would necessarily affect and be dispositive of the interests of other similarly situated litigants'").  Thus, certification under 23(b)(1)(B) is likewise appropriate.

Having found that certification is appropriate under 23(b)(1)(A) and 23(b)(1)(B), it is unnecessary to determine whether the suit may be certified under Rule 23(b)(2) or Rule 23(b)(3).

### C.  Rule 23(e) Requirements

Class settlements must be fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  When the settlement takes place before formal class certification, as it has here, the settlement requires a "higher standard of fairness."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2021) (quoting *Hanlon*, 150 F.3d at 1026).  This "more exacting review" of pre-certification class settlements is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent."  *Lane*, 696 F.3d at 819; *see Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).  At the preliminary approval stage, the Court analyzes both the procedural and substantive components of the settlement.  *Criswell*, 2021 WL 4461640, at *3 (citing *In re Tableware*

*Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

### 1. Settlement Process

When reviewing the settlement process, the Court considers whether the agreement appears to be the product of arms-length negotiations, and not the result of collusion or fraud. Fed. R. Civ. P. 23(e)(2)(B); *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012)). While mediation supports the conclusion that the settlement was not the product of collusion, the presence of a mediator, on its own, is not dispositive of whether the settlement agreement is fair, adequate, and reasonable. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011); *Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *4 (E.D. Cal. Sept. 9, 2022) (citing *Palacious v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *8 (E.D. Cal. Jul. 6, 2016)).

Plaintiff's counsel submits a declaration in support of the motion for preliminary approval. (Doc. No. 158-2). The declaration of R. Joseph Barton details that discovery that was obtained prior to settlement, pursuant to the Court's order (Doc. No. 80), including the 2018 Transaction documents, reports/opinions valuing Ritchie stock during the 2018 Transaction and after, resolutions and minutes of the Board and ESOP fiduciaries, the written instrument of the ESOP, and insurance agreements that allowed Plaintiff's counsel to assess the amount of available insurance. (Doc. No. 158-1 at 16; Doc. No. 158-2 at 2 ¶ 2). Plaintiff also issued nine interrogatories, and the parties exchanged 26(a) disclosures. (Doc. No. 158-2 at 2 ¶ 3). After receiving Defendants' discovery, Plaintiff obtained expert reports analyzing the valuation documents. (Id. at ¶ 4). Based on this this information, Defendants' Answers (Doc. Nos. 51, 54, 63), the arguments made in Defendants' Motions to Dismiss (Doc. Nos. 40, 42, 48), and the Parties' mediation settlements, Plaintiff's counsel affirms that he was able to make an informed decision about the strengths and weaknesses of the case. (Doc. No. 158-1 at 16; Doc. No. 158-2 at ¶ 5, 6).

Over the span of two years, the Parties engaged in ongoing negotiations and three separate mediation sessions with two different mediators. (Doc. No. 158-1 at 15; Doc. No. 158-2 at 2-3 ¶ 6-10). On January 23, 2023, the parties engaged in a remote mediation session with an

experienced complex litigation mediator, resulting in a mediator's proposal that was not accepted by all Defendants but "formed the basis for future negotiations." (Doc. No. 158-1 at 16; Doc. No. 158-2 at ¶ 6-8). The Parties continued to negotiate terms and participated in a remote Voluntary Dispute Resolution Proceeding ("VDRP") with another experienced mediator on April 2, 2024 and May 7, 2024. (Doc. No. 158-1 at 17; Doc. No. 158-2 at 3 ¶ 9). The Parties continued settlement negotiations and eventually reached a Settlement Agreement in March 2025. (Doc. No. 158-2 at 3 ¶ 10).

Given this background, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations.

### 2. Range of Possible Approval

To evaluate whether a settlement falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1131 (E.D. Cal. 2018) (citations omitted); *see Campbell*, 951 F.3d. at 1123 ("settlement's benefits must be considered by comparison to what the class actually gave up by settling").

Here, as detailed above, the Settlement Agreement provides that (1) $485,000.00 will be paid into a Cash Settlement Fund, and (2) the principal balance of the ESOP-related debt will be reduced by $1.4 million. (Doc. No. 158-1 at 17; Doc. No. 158-3 at ¶ IV). As a result of this loan modification, 115,000 shares of Employer Stock held in ESOP Suspense Account will be released and allocated to the ESOP accounts of class members. (*Id.*). Plaintiff's counsel attests, based on the 2023 ESOP reports and valuation report, that the amount of shares allocated to ESOP participants will increase by 46% (compared to those in 2023), and the "immediate impact" of the $1.4 million debt reduction would increase the allocation shares from $400,605 to $827,108. (Doc. No. 158-1 at 18; Doc. No. 158-2 at 3 ¶ 11). Plaintiff's counsel also indicates the reduction in debt will allow the ESOP debt to be paid down more quickly and a greater number of shares will be released, "meaning that participants will receive their ESOP shares more quickly." (*Id.*).

Plaintiff's expert assessed the valuation of the 2018 Transaction at issue likely overvalued Ritchie Trucking between $6.2 and $9 million. (Doc. No. 158-1 at 18; Doc. No. 158-2 at 2 ¶ 4).

Thus, the estimated gross settlement amount of $1.885 million, which is the sum of $485,000.00 cash settlement and the $1.4 million in debt reduction, represents between 21-30% of the amount that could have been recovered for the class if Plaintiff prevailed.  (Doc. No. 158-1 at 18; Doc. No. 158-2 at 4 ¶ 12).  Plaintiff's counsel further estimates the average gross recovery per Payee Class Member will be $9,425.00.  (Doc. No. 158-1 at 18; Doc. No. 158-2 at ¶ 13).  Plaintiff argues the settlement amount is "within the range reasonableness for possible approval both by percentage and per participant," as it "compares favorably" to other ERISA class action settlements.  (Doc. No. 158-1 at 18-19 (*citing*, *e.g., Gamino v. KPC Healthcare Holdings, Inc*., 2022 WL 20581948, at *3 (C.D. Cal. Nov. 18, 2022) (settlements representing between 7.1 and 7.3% of the Plan's total losses was within the range of possible approval, and approving ESOP settlement in aggregate providing $2,900 per participant); *Hurtado v. Rainbow Disposal Co., Inc*., 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (ERISA settlement between 23% and 34% of maximum losses was in line with other cases); *Marshall v. Northrop Grumman Corp*., 2020 WL 5668935, at *2 (C.D. Cal. Sept. 18, 2020) (describing settlement fund representing approximately 29% of Plaintiff's claimed damages at trial as an "exceptional result for the Class.").

Finally, "[i]n considering the reasonableness of monetary and non-monetary recovery under the Settlement Agreement, the Court considers the risks of continued litigation."  *Foster*, 2021 WL 4924849, at *6.  Here, in the absence of settlement, Plaintiff recognizes the proposed class would face "significant" litigation risk including Defendant's argument that the class should not be certified, as well as risks on summary judgment, trial, and appeal.  (Doc. No. 158-1 at 19-21).  Plaintiff further acknowledges that the "complexity, expense, and duration of ESOP class actions favor settlement."  (*Id*. at 20).  As recognized by one court in this district, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.  This is especially true here given that 'ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases."  *Foster*, 2021 WL 4924849, at *6 (internal citations omitted).

The estimated recovery for each class member amounts to a 46% increase in the amount of shares allocated to class member's ESOP accounts, and an average gross recovery per Payee

1   Class Member of $9,425.00.  (Doc. No. 158-2 at 3-4 ¶ 11, 13).  Given the considerations above,

2   the Court finds the settlement is within in the range of possible approval.

3               **3.  No Obvious Deficiencies**

4        The Court next "considers whether there are any obvious deficiencies with the proposed

5   settlement."  *Van Lith*, 2017 WL 1064662, at *17 (quoting *Pierce v. Rosetta Stone, Ltd.*, 2013

6   WL 1878918, at *5 (N.D. Cal. May 3, 2013)).

7        The one potential deficiency obvious to the Court is the attorney's fees and costs

8   provisions.  Particularly in pre-certification settlements, the district "is required to search for

9   'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest."  *Kim*, 8 F.4th

10  at 1179 (quoting *In re Bluetooth*, 654 F.3d at 947); *see also Briseño*, 998 F.3d at 1024-25.

11  Possible signs of shortchanging the class include: (1) class counsel's receipt of a disproportionate

12  distribution of the settlement or a handsome fee and minimal monetary class recovery, (2) a

13  "clear sailing" provision under which defendant agrees not to object to the attorneys' fees sought

14  or payment of fees are made separate from class funds, and (3) an agreement that fees not

15  awarded will revert to the defendant, not to the class fund.  *Kim*, 8 F.4th at 1180; *In re Bluetooth*,

16  654 F.3d at 947.

17       Here, there is evidence of a clear sailing provision because Defendants agree to take no

18  position regarding the application for an award of attorneys' fees.  (Doc. No. 158-3 at 36 ¶

19  VIII(2)).  Clear sailing provisions are not prohibited nor are they "fatal to final approval[;]"

20  however, the existence of such a provision requires the court to investigate the provision of a

21  settlement agreement with heightened scrutiny.  *In re Bluetooth Headset Products Liability*

22  *Litigation*, 654 F.3d 935, 948 -49 (9th Cir. 2011) (citing *Weinberger v. Great Northern Nekoosa*

23  *Corp.*, 925 F.3d 518, 525 (1st Cir. 1991)); Swain v. Anders Group, 2023 WL 2976368, at *10

24  (E.D. Cal. Apr. 17, 2023) (citing *In re Bluetooth*, 654 F.3d at 948; *In re Toys R Us-Delaware*

25  *Inc.- Fair and Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014));

26  *see also McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021).

27       As discussed *supra*, the Parties engaged in years of negotiations and Plaintiff obtained

28  discovery from Defendants including 2018 Transaction documents, reports/opinions valuing

                                        23

1    Ritchie stock during and after the 2018 Transaction, insurance agreements, and interrogatory

2    responses, that allowed Plaintiff to obtain expert-assessed valuations and make an informed

3    decision about the merits of the case.  (Doc. No. 158-1 at 16; Doc. No. 158-2 at 2 ¶ 2-5).  Plaintiff

4    also acknowledged the complexity, expense, and significant risks in pursuing this class action at

5    every stage of litigation.  (Doc. No. 158-1 at 19-21). Such additional information alleviates some

6    of the Court's concerns surrounding the clear sailing provision.  *See Monterrubio v. Best Buy*

7    *Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. May 14, 2013) ("approval of a class action is proper

8    as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of

9    their cases.") (citation omitted).

10       The attorneys' fees will be paid out of the Cash Settlement Fund.  (Doc. No. 158-3 at 35

11    ¶VIII(1)).  Plaintiff's counsel attests that his current and prior firms have incurred more than

12    $500,000 in lodestar to date.  (Doc. No. 158-2 at 4 ¶ 14).  Counsel further acknowledges that,

13    based on the estimated gross settlement amount of $1.885 million, a "25% award" would result in

14    an award of $471,000 in fees, less than the estimated lodestar amount already incurred.  (Doc. No.

15    158-1 at 24).  *See In re Bluetooth*, 654 F.3d at 942, 943 ("Several courts have embraced the

16    constructive common fund approach, warning that 'private agreements to structure artificially

17    separate fee and settlement arrangements' should not enable parties to circumvent the 25%

18    benchmark requirement on 'what is economic reality a common fund situation.'") (quoting *In re*

19    *GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55. F.3d 768, 821 (3d Cir. 1995); citing

20    *Johnston v. Comerica Mortg. Corps.*, 83 F.3d 241, 246 (8th Cir. 1996)); *see also Taylor v. FedEx*

21    *Freight, Inc.*, 2016 WL 6038949, at *5 (E.D. Cal. Oct. 13, 2016) ("[p]ercentage awards of

22    between twenty and thirty percent are common"); *see also* Newberg on Class Actions § 15:83

23    (2021) ("An earlier edition of the Treatise reported that (then-available) empirical studies showed

24    that fee awards in class actions average around one-third of the recovery, a statement quoted by

25    many courts.[]  More recent empirical data on fee awards demonstrate that percentage awards in

26    class actions are generally between 20–30%,[] with the average award hovering around 25%").

27    Proposed class counsel's estimated attorneys' fees appear to be within the acceptable range;

28    however, the Court will reserve ruling on proposed class counsel's attorneys' fees until a motion

1  for attorneys' fees is filed.

2  ### 4. Preferential Treatment

3  #### a. Allocation of Payments

4  The Court must determine whether the Settlement Agreement "provides preferential

5  treatment to any class member." *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7

6  (N.D. Cal. Nov. 21, 2012).  As detailed *supra*, per Class Counsel's Proposed Plan of Allocation,

7  each class member will be credited with an amount of cash equal to the product of the total

8  amount of cash to be allocated and Payee class member's Pro Rata Coefficient, and each Payee

9  class member's ESOP account will be credited with a number of shares equal to the product of

10  the total number of shares released as a result of loan modification and the Payee class member's

11  pro rata Coefficient.  (Doc No. 158-3 at 71).  Each class member suffered the same injury and

12  will receive pro rata payment.  Thus, this is an equitable and reasonable method of allocating

13  class members' payments.  *Cf. Vu v. Fashion Institute of Design & Merchandising*, 2016 WL

14  6211308, at *3 (C.D. Cal. Mar. 22, 2016) (denying preliminary approval of settlement agreement

15  because class members received uniform payment despite statutory penalties varying widely with

16  respect to each class member).

17  #### b. Service Award

18  Discretionary, service awards are "fairly typical in class action cases." *Rodriguez v. West*

19  *Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "'Incentive awards typically range from

20  $2,000.00 to $10,000.00,' and '[higher] awards are sometimes given in cases involving much

21  larger settlement amounts.'"  *Sanders v. LoanCare, LLC*, No. 2:18-cv-09376-SJO (RAOx), 2019

22  WL 12340195, at *12 (C.D. Cal. Sept. 16, 2019) (quoting *Bellinghausen*, 306 F.R.D. at 266-67).

23  Such awards are intended to compensate the plaintiff for work performed on behalf of the class

24  and to make up for financial or reputational risk.  *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d

25  1045, 1057-58 (9th Cir. 2019).  A plaintiff must provide the necessary information needed for the

26  court to evaluate his or her incentive award.  *Crump v. Hyatt Corp.*, 2022 WL 2239835, *5 (N.D.

27  Cal. Jun. 17, 2022) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  There is no

28  precise method for calculating the amount of an appropriate service award; such awards are

1  intended to compensate the plaintiff for work performed on behalf of the class and to make up for

2  financial or reputational risk. *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th

3  Cir. 2019). When evaluating incentive awards, courts may also consider general or specific

4  evidence of potential workplace retaliation or reputational risk. *See, e.g., Staton v. Boeing Co.*, 327

5  F.3d 938, 977 (9th Cir. 2003); *Arredondo v. Southwestern & Pacific Specialty, Inc.*, 2022 WL

6  2052681, at * 2-3 (E.D. Cal. Jun. 7, 2022).

7      Proposed class counsel will seek a $5,000.00 service award of up to $5,000 for Named

8  Plaintiff Imber. (Doc. No. 158-1 at 24-25; Doc. No. 158-3 at 35-36 ¶ VIII(1)). Any service

9  award will be paid solely from the Cash Settlement Fund. (*Id*.). Defendant will take no position

10  on the service award if it does not exceed $5,000.00. (*Id*. at 36 ¶ VIII(2)). Plaintiff took the

11  initiative to contact attorneys with experience litigating ESOP cases, assisted with investigating

12  the case, provided background information, reviewed the pleadings, authorized the filing of the

13  Complaint, participated in mediation, and has actively monitored the progress of the case and

14  settlement. (Doc. No. 156-1 at 25, Doc. No. 156-4). Although the Court will determine the

15  specific amount to be awarded to Named Plaintiff Imber at the final approval, the service award

16  request does not establish preferential treatment that would prevent preliminary approval.

17      **D. Notice to Class Members**

18      For "any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate

19  notice to the class." Fed. R. Civ. P. 23(c)(2) (emphasis added). In terms of content, "[t]he notice

20  must clearly and concisely state" the following "in plain, easily understood language": (1) "the

21  nature of the action;" (2) "the definition of the class certified;" (3) "the class claims, issues, or

22  defenses;" (4) "that a class member may enter an appearance through an attorney if the member

23  so desires;" (5) "that the court will exclude from the class any member who requests exclusion;"

24  (6) "the time and manner for requesting exclusion;" and (7) "the binding effect of a class

25  judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The proposed Notice

26  (Doc. No. 158-4) meets each of these standards with the following modifications and clerical

27  edits:

28      • Pursuant to the Parties' Agreement at the August 26, 2025 telephonic conference

26

(Doc. No. 176), page 1, paragraph 1, sentence 3, shall be modified follows: "As the debt from the 2018 ESOP Transaction decreases the value of Ritchie Trucking Service Holdings, Inc. ("Ritchie") stock, the reduction in that debt will result in a release of 115,000 shares from the ESOP's Suspense Account and should increase the value of Ritchie stock held by the ESOP as of December 31, 2024."

- Page 6-7, the Clerk of Court should be deleted as the party to receive objections. Objections should be sent to Class Counsel, who is then responsible for filing any objections with the Court no later than 10 days after the deadline along with any response to submitted objections for the Court's review.

- Page 7, italicized portion, should be corrected to read: "If you have no objections to the Settlement or the request for attorneys' fees or expenses, then you do not need to send any written statement to the Court."

- Page 8, delete redundant first sentence: "There are several types of information that You may want about the settlement."

Notice will be provided to each individual participant class member, and each beneficiary class member, by email if possible, or by first class U.S. Mail if email is not available. (Doc. No. 158-1 at 28; Doc. No. 158-3 at 16 ¶ III(4)). In the event that a Notice sent by email is returned as undeliverable, the Notice will be re-sent by U.S. Mail, and if a Notice sent by U.S. mail is undeliverable, Class Counsel and/or the Settlement Administrator will make reasonable efforts to obtain a valid mailing address and resend the Class Notice by U.S. Mail. (Doc. No. 158-1 at 28; Doc. No. 158-3 at 17 ¶ III(7)). Notice will also be posted on a dedicated website maintained by the Settlement Administrator, and the Settlement Administrator will maintain and staff a toll-freephone number. (*Id*. at 17 ¶ III(4), 34 VII(2)(f)).

This proposed notice plan is sufficient.

**CONCLUSION**

For the reasons provided herein, the Court **ORDERS** the following:

(1)     Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Doc. No. 158) is GRANTED.

27

(2)     Plaintiff's Motion for Class Certification (Doc. No. 156) is GRANTED to the extent that the Court conditionally certifies the following Settlement Class pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only in accordance with the terms of the Settlement Agreement as follows:

> All participants in the ESOP from December 31, 2018, or any time thereafter until December 31, 2024 (unless the participant terminated without vesting) and those participants' beneficiaries other than the Excluded Persons.

> "Excluded Persons" means the following persons who are excluded from the Class: (a) Defendants; (b) any fiduciary of the Plan; (c) the officers and directors of Ritchie Trucking or of any entity in which the individual Defendants have a controlling interest; (d) immediate family members of any of the foregoing excluded persons; and (e) the legal representatives, successors, and assigns of any such excluded persons.

(3)     For settlement purposes only, Plaintiff's counsel, R. Joseph Barton, is APPOINTED as class counsel.

(4)     For settlement purposes only, Plaintiff Brandon Imber, is APPOINTED as the class representative.

(5)     The Court preliminarily APPROVES the Settlement, including the Proposed Plan of Allocation, as fair, reasonable, and adequate.  The Court will evaluate the requested attorney's fees, costs, incentive award, and settlement administrator's costs at Final Approval.

(6)     The form and method of Notice to the Class Members, (*see* Doc. No. 158-4), with the modifications identified *supra*, is APPROVED.

(7)     Analytics Consulting LLC is APPROVED to serve as the neutral, third-party Settlement Administrator in accordance with the Settlement Agreement and consistent with this Order.

(8)     The Cash Settlement Fund meets the requirements of a "qualified settlement fund" for federal income tax purposes under IRC 468 and Treas. Reg. § 1.468B-1 and will be deemed and considered to be *in custodia legis* of the Court and will remain subject to the jurisdiction of the Court until such time as such funds will be distributed pursuant to the Settlement Agreement and/or the Order of the Court.

28

The Court further **ORDERS** the following schedule for this matter:

(1)     No more than **five (5) calendar days after entry of this Order**, Plaintiff shall further revise the proposed class notice consistent with this Order, fill in all blank or bracketed placeholders with the appropriate information, and resubmit it to the Court for approval.

(2)     No more than **seven (7) calendar days after entry of this Order**, Defendant shall provide the Settlement Administrator and Class Counsel with Class Data for purposes of sending the Notice to the settlement class members.  (Doc. No. 158-3 at 17 ¶ III(8)).

(3)     No more than **twenty-one (21) calendar days after receipt of the Class Data**, the Settlement Administrator shall send a copy of the Notice to each individual participant class member, and each beneficiary class member, by email if possible, or by first class U.S. Mail if email is not available.  (Doc. No. 158-3 at 16 ¶ III(4)).  Before the initial mailing of the Notice, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses, including by using the means identified in the settlement agreement. The Settlement Administrator shall also ensure by this date that the settlement website and toll-free number is "live."  (Doc. No. 23-2 at 6 ¶ 5(b)).

(4)     No more than **thirty (30) calendar days after the Notice is sent**, the Settlement Administrator will file a declaration with the Court confirming the Notice and related information was sent in according with this Order.  (Doc. No. No. 158-3 at 17 ¶ III(10).

(5)     Any written objection to the Settlement must be mailed to Class Counsel at the address provided in the Class Notice and must be postmarked **no later than forty-five (45) days after the Notice date.**  (Doc. No. No. 158-3 at 17 ¶ X(1)(h)).  Any objections should be filed with Court no later than 10 days after the deadline for objections, along with Class Counsel's response to submitted objections.

(6)     Any challenges to Plan account or shares data must be mailed to the Settlement Administrator at the address provided in the Class Notice and must be postmarked **no later than forty-five (45) days after the Notice date**.

(7)     Plaintiff shall file any final approval motion, along with all objections sent to the Settlement Administrator, and any motion for attorney's fees and costs and Named Plaintiff

incentive award, by **no later than twenty-eight (28) calendar** days before the Final Hearing Date.  The briefing should include information about the number of undeliverable class notices, and reasonable estimates the individual settlement payments.  It should also respond to any objections; and

      (8)    The Court shall hold a hearing regarding final certification of the class and final approval of the settlement on **Friday, December 19, 2025 at 10:00 a.m. in Courtroom 6 at the U.S. District Court, Eastern District of California, 2500 Tulare Street, Fresno, CA.**  The Court reserves the right to adjourn or continue the date of the Final Approval Hearing and all dates provided for in the Settlement Agreement without further notice to Settlement Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

Dated:   September 19, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE