1
2
3
4
5
6
7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  BRANDON IMBER, individually and on behalf of all others similarly situated, | Case No.  1:22-cv-00004-HBK |
| 12 | ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT[1] |
| 13          Plaintiff, | |
| 14      v. | (Doc. No.  186) |
| 15  BRUCE LACKEY, PAM LACKEY, LACKEY FAMILY TRUST, COLE | |
| 16  SCHARTON, THE ADMINISTRATIVE COMMITTEE OF THE PEOPLE | ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND REMINBURSEMENT OF EXPENSES |
| 17  BUSINESS EMPLOYEE STOCK OWNERSHIP PLAN, MIGUEL | |
| 18  PAREDES, RICH ROUSH, DEL THACKER, RICHARD DEYOUNG, | (Doc. No.  188) |
| 19  AND RITCHIE TRUCKING SERVICE HOLDINGS, INC., | |
| 20          Defendants, | ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR SERVICE AWARD |
| 21  and | (Doc. No.  179) |
| 22  PEOPLE BUSINESS EMPLOYEE STOCK OWNERSHIP PLAN, | |
| 23 | |
| 24 | |
| 25          Nominal Defendant | |

26
27
28

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 130).

Pending before the Court is Plaintiff Brandon Imber's ("Plaintiff" or "Imber") Motion for Final Approval of Class Settlement (Doc. No. 186), Motion for Attorneys' Fees and Reimbursement of Expenses (Doc. No. 188), and Motion for Service Award (Doc. No. 179). (together, "Motions"). Filed in support of the Motion for Final Approval of Class Settlement is the declaration of Class Counsel, R. Joseph Barton ("Counsel"). (Doc. No. 186-2). Filed in support of the Motion for Attorneys' Fees and Reimbursement of Expenses is the declaration of Counsel (Doc. No. 188-2), time records from The Barton Firm and Counsel's former firm Block and Leviton (Doc. Nos. 188-3, 188-4, Exhs. A, B), the declaration of Daniel Fienberg (Doc. No. 188-5), and the declaration of Gregory Y. Porter (Doc. No. 188-6). And filed in support of Plaintiff's Motion for Service Award is the declaration of class representative Brandon Imber. (Doc. No. 179-2).

On December 19, 2025, the Court held a hearing on Plaintiff's Motions. (Doc. No. 201). Attorney R. Joseph Barton appeared on behalf of Plaintiff. Attorney Timothy Schowe appeared on behalf of Defendants Pam Lackey and Bruce Lackey. Attorneys William C. Hahesy and Dale C. Campbell appeared on behalf of Defendant Lackey Family Trust. Attorney Ronald K. Alberts appeared on behalf of Defendants Cole Scharton, Rick Roush, Del Thacker, Richard Deyoung, Ritchie Trucking Service Holdings, Inc., the Administrative Committee of the People Business Employee Stock Ownership Plan, and the People Business Employee Stock Ownership Plan. appeared on behalf of Defendants. (*Id*.). Attorney Richard J. Pearl appeared on behalf of Defendant Miguel Paredes. Mr. Imber, the named Plaintiff and class representative appeared. (*Id*.). No objectors appeared. Defense Counsel represented that Defendants have no opposition to the requested attorneys' fees, administrative expenses, or service award at the hearing. (*Id*). Defense Counsel did raise a concern at the hearing to certain language regarding the "releases" section of Plaintiff's proposed order accompanying the motion for final approval of the class settlement. (*Id*.). The Parties were directed to submit any additional documents or arguments they wished the Court to consider before noon on December 22, 2025. (*Id*.). After the hearing, on December 19, 2025, Defendants filed an "Amended Notice of Submission by Defendants of Revised [Proposed] Order Granting Final Approval of the Class Action Settlement" notifying the

Court and counsel for Plaintiff that they filed a revised proposed order incorporating "the changes agreed to by all parties to Paragraph 26 and using the Plaintiff's language in Paragraph 23." (Doc. No. 203).

Having considered the moving papers, declarations, attached exhibits, and applicable law, as well as the Court's file, the Court grants the Motions to the extent set forth herein.

## BACKGROUND

The Court's September 19, 2025 Order granting the motion for class certification for the purposes of settlement and the motion for preliminary settlement approval described the background and procedural history of this action in detail. (Doc. No. 177 at 2-6). The Court briefly summarizes the pertinent matters here.

Plaintiff filed the present action on December 30, 2021, on behalf of himself and others similarly situated. (Doc. No. 1, "Complaint"). Plaintiff and the proposed class members were participants in or beneficiaries of the People Business Employee Stock Ownership Plan ("ESOP"), an employee pension benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), from December 31, 2018, or at any time thereafter until December 31, 2024. The Complaint asserts seven claims against Defendants[2] for their respective roles in alleged violations under ERISA, as amended, 29 U.S.C. § 1001 et seq., in connection with the December 31, 2018 sale of 2,000,000 shares of common stock of Ritchie Trucking Service Holdings, Inc. ("Ritchie Holdings") to the People Business Employee Stock Ownership Plan ("ESOP") for $19,543,000 (the "2018 Transaction").

Count I: Engaging in prohibited transaction forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), against Defendant Paredes, the Selling Shareholder Defendants and the Committee Defendants. (*Id*. ¶¶ 83-92).

Count II: Engaging in prohibited transaction forbidden by ERISA § 406(b), 29 U.S.C. § 1106(a)-(b), against Selling Shareholder Defendants. (*Id*. ¶¶ 93-101).

---

[2] As clarified in the Motion for Preliminary Settlement Approval, the "Trustee" is defined as Defendant Paredes, the "Committee Defendants" consist of Bruce Lackey, Pam Lackey, and Cole Scharton, the "Director Defendants" include Defendants DeYoung, Roush and Thacker, and the "Selling Shareholders" are Bruce Lackey, Pam Lackey, and the Lackey Family Trust. (Doc. No. 158-1 at 10).

Count III: Breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against Defendant Paredes and the Committee Defendants.  (*Id*. ¶¶ 102-114).

Count IV: Breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against Defendant Paredes and the Committee Defendants to remedy or correct the 2018 Transaction.  (*Id*. ¶¶ 115-121).

Count VI: Breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against the Director Defendants for failure to monitor the Trustee and Committee Defendants.  (*Id*. ¶¶ 136-146).

Count VII: Co-fiduciary liability under ERISA § 405, 29 U.S.C. § 1105, against the Director Defendants, Committee Defendants, and Defendant Paredes.  (*Id*. ¶¶ 147-157).

Count VIII: Violation of ERISA § 410, 29 U.S.C. § 1110 and breach of fiduciary duty under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D) against Defendant Paredes, the Director Defendants, the Committee Defendants, and Defendant Ritchie Holdings.  (*Id*. ¶¶ 158-174).

Effectively, Plaintiff contends the ESOP fiduciaries failed to provide or provided incomplete information to the ESOP's advisors related to the 2018 Transaction, Defendant Paredes, as the ESOP's Trustee, failed to conduct a prudent investigation as to the purchase price, and as a result of these failures to disclose information and perform due diligence, the ESOP paid more than fair market value for Ritchie Holdings stock in the 2018 Transaction.  (*Id*. ¶¶ 9-17, 60-63, 65-69, 71, 72-77 (asserting that even after the financial position of Ritchie Trucking declined after 2018 Transaction, Defendant Trustee and individual ESOP fiduciaries did not undertake an investigation or corrective action to remedy the ESOP's overpayment)).

After more than three years of litigation including, but not limited to, Answers to the Complaint (Doc. Nos. 51, 54, 63), fully briefed motions to dismiss (Doc. Nos. 40, 42, 48), limited discovery (Doc. No. 80), and participation in both mediation and voluntary dispute resolution proceedings, the parties eventually reached an agreement in March 2025 and filed a Notice of Settlement on April 9, 2025.  (*See generally* Doc. Nos. 89-153; Doc No. 158-2 at 3 ¶10).  On

May 21, 2025, Plaintiff filed a motion for class certification for the purposes of preliminary approval of the class action settlement (Doc. No. 156), and a motion for preliminary approval of class action settlement (Doc. No. 158), which were granted on September 19, 2025.  (Doc No. 177).  The Court appointed Imber as the Class Representative and appointed the R. Joseph Barton as Class Counsel.  (Doc. No. 177 at 28).   Finally, the Court appointed Analytics Consulting, LLC as the Settlement Administrator.  (*Id.*).

On October 30, 2025, Plaintiff filed a Motion for Service Award.  (Doc. No. 179).  On November 13, 2025, Defendants filed a Notice indicating they take no position on the Motion so long as the combined awards of attorneys' fees and expenses and the service award do not exceed the total Cash Settlement Fund, and the amount requested does not exceed $5,000.00.  (Doc. No. 183).  On November 21, 2025, Plaintiff filed a Motion for Final Approval of Class Action Settlement. (Doc. No. 186).  On December 4, 2025, Defendants filed a Notice indicating they did not oppose the Motion so long as it is consistent with the Class Action Settlement Agreement. (Doc. No. 189 (citing Doc. No. 158-3 at 39-40, ¶ X.2)).  Also on November 21, 2025, Plaintiff filed a Motion for Attorneys' Fees and Reimbursement of Expenses.  (Doc. No. 188).  On December 4, 2025, Defendants filed a Notice indicating they take no position on the Motion so long as the combined award of attorneys' fees and expenses, service award, and pertinent settlement administration expenses do not exceed the total Cash Settlement Fund.  (Doc. No. 190).  On December 11, 2025, Defendants filed a supplemental notice and response to the motion for final approval of the class action settlement notifying the Court that the parties received the Report of the Independent Fiduciary on December 8, 2025.  (Doc. No. 192).  On December 15, 2025, Plaintiff filed a reply and updated proposed final order that includes provisions related to the Independent Fiduciary report per the Settlement Agreement.  (Doc. No. 194).  On December 19, 2025, Defendants filed an "Amended Notice of Submission by Defendants of Revised [Proposed] Order Granting Final Approval of the Class Action Settlement."  (Doc. No. 203).

**SETTLEMENT TERMS**

**A.  Rule 23 Settlement Class**

The proposed settlement class is identified as:

All participants in the ESOP from December 31, 2018, or any time thereafter until December 31, 2024 (unless the participant terminated without vesting) and those participants' beneficiaries other than the Excluded Persons.

"Excluded Persons" means the following persons who are excluded from the Class: (a) Defendants; (b) any fiduciary of the Plan; (c) the officers and directors of Ritchie Trucking or of any entity in which the individual Defendants have a controlling interest; (d) immediate family members of any of the foregoing excluded persons; and (e) the legal representatives, successors, and assigns of any such excluded persons.

(Doc. No. 158-3 at 7 ¶ I(H), (W); Doc. No. 156-1 at 11). Defendants produced data identifying 175 participant class members. (Doc. No. 186-1 at 15; Doc. No. 186-2 at 2, ¶ 5).

**B. Releases**

Pursuant to the Settlement Agreement:

1.    **Release of Defendants by Plaintiff and the Class.** Plaintiff and the Class Members (including their heirs, executors, administrators, successors, and assigns), solely in their capacity as participants in the Plan or as beneficiaries of Class Members who are participants in the Plan, fully and finally release Defendants, and each of them and, as applicable depending on whether such releasee is an individual or an entity, including each Defendant's past and present officers, directors, shareholders, members, affiliates, independent contractors, agents, insurers, insurance administrators, attorneys, fiduciaries, trustees, heirs, administrators, executors, devisees, conservators, representatives, parents, subsidiaries, predecessors-in-interest, successors-in-interest, trusts, spouses, and assigns, from any and all claims, or causes of action (including any claims for costs, attorneys' fees and/or expenses incurred by Plaintiff or his counsel in this Action as to the Class Claims), whether in law or in equity, whether known or unknown, whether fixed or contingent, that Plaintiff or the Class Members have prior to the date of the date of the execution of this Settlement Agreement that are asserted in the Class Claims, or are based on or arise out of the same factual predicate alleged in the Class Claims, (the "Settled Class Claims").

2.    **Release of Plaintiff and the Class by Defendants.** Defendants fully and finally release Plaintiff, each Class Member, Plaintiff's Counsel (and any of its attorneys) and Class Counsel from any and all claims or causes of action, whether in law or in equity, whether known or unknown, that Defendants have or have had against Plaintiff, each Class Member, Plaintiff's Counsel (and any attorneys of those firms) or Class Counsel (a) related to the correctness of the amount in any of the Class Member's Plan accounts (as reflected in the data provided by Defendants) or (b) any claims, including for attorneys' fees, costs, expenses, sanctions, that relate to the filing, commencement, prosecution, or settlement of this

Action as to the Class Claims.

3. **Conditional Release by the Independent Fiduciary**. Subject to the determination of an Independent Fiduciary [] that the Settlement is consistent with Prohibited Transaction Exemption 2003-39, the Independent Fiduciary will approve the release of the Settled Class Claims [] and will issue a release of the Settled Class Claims on behalf of the Plan (which release will include a Waiver of California Civil Code Section 1542 []). The release approved by the Independent Fiduciary shall not, however, include a release of claims by any person who is not a member of the Class, including claims with respect to any alleged loss such person may have suffered to his or her Plan account.

(Doc. No. 158-3 at 44-45 ¶ XIV (1)-(3)). In addition, the Parties provide a release of all known and unknown claims under California Civil Code § 1542:

The Parties on behalf of themselves and all persons and entities on whose behalf they are providing the releases herein, acknowledge and understand that there is a risk that, subsequent to the execution of this Agreement, they may accrue, obtain, incur, suffer, or sustain claims which in some conceivable way are based on or arise out of the same factual predicate alleged in the Class Claims and that such claims are unanticipated at the time this Agreement is signed, or are not presently capable of being ascertained. The Parties further acknowledge that there is a risk that any claims as are known or should be known may become more serious than they now expect or anticipate. Nevertheless, to the extent permitted by California law, the Parties hereby expressly waive all rights they may have in such unknown consequences or results. To the extent permitted by California law, the Parties acknowledge that they have had the benefit of and the opportunity to consult with their counsel, understand the import of Civil Code section 1542, and expressly waive the protection of Civil Code section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(*Id*. at 45-46 ¶ XIV (4)).  Finally, the Parties expressly do not agree to release (1) claims to enforce the Settlement Agreement, (2) Plaintiff's individual claim at Count V, and (3) any claim for attorneys' fees, expenses, or costs incurred in bringing Count V.  (*Id*. at 46 ¶ XIV (5)).

////

////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C. Payment Terms**

    **1. Cash Settlement Fund**

    The Settlement calls for Defendants to pay $485,000.00, plus any earnings and interest accrued thereon, into a Cash Settlement Fund which will be distributed to class members in accordance with their ESOP accounts minus any Court-approved deductions and expenses, including attorneys' fees, the service award for the class representative, estimated taxes on income earned on the Cash Settlement Fund and related costs, costs related to the Class Notice, and costs incurred by the Settlement Administrator.  (Doc. No. 158-3 at 18-19 ¶ IV(A)(1), ¶ V(A)).  Pursuant to Class Counsel's Proposed Plan of Allocation, each class member's "General Account shall be credited with an amount of cash equal to the product of the total amount allocated and Payee Class Member's Pro Rata Coefficient."[3]  (Doc. No. 158-3 at 71).  Distribution from the net Cash Settlement Fund will be paid through the Plan and distributed to class members.  (Doc. No. 186-1 at 14; Doc. No. 158-3 at 25 ¶ V.A.5).

    **2. Stock Settlement**

    The Settlement requires that the principal balance of the ESOP-related debt will be reduced by $1.4 million; and as a result of this loan modification, 115,000 shares of Ritchie Trucking Employer Stock ("Employer Stock") held in ESOP Suspense Account will be released and allocated to the ESOP accounts of class members pursuant to a Court-approved plan of allocation.  (Doc. No. 158-3 at 19-21 ¶ IV(B), ¶ V(B)).  Pursuant to Class Counsel's Proposed Plan of Allocation, each class member's ESOP account "shall be credited with a number of shares equal to the product of the total number of shares released as a result of the Loan Modification and the Payee Class Member's Pro Rata Coefficient."  (Doc. No. 158-3 at 71).  Distribution of the Stock Settlement will be paid under the applicable terms of the Plan "which ensures every Class Member will benefit from this Settlement and ensures tax-favored treatment of the Settlement proceeds.  (Doc. No. 186-1 at 14; Doc. No. 158-3 at 26-29 ¶ V.B).

---

[3] "Payee Class Member" is defined as a class member with an immediate right to receive benefits through the ESOP.  (Doc. No. 158-3 at 69).  "Pro Rata Coefficient" is defined as a Payee Class Member's credited balance divided by the sum of the credited balances of all Payee Class members.  (*Id*. at 70).

**3. Defendants Will Bear Costs**

Aside from the costs and expenses of the Settlement Administrator, including the costs of the Class Notice, Defendant Ritchie Trucking will bear all costs of administration of the Settlement. (*Id.* at 29 ¶ V(C). No fees, expenses, costs, or other charges will be imposed on class members to have their proceeds from the Settlement deposited into ESOP accounts or otherwise related to the administration of the Settlement, or costs of any Independent Fiduciary. (*Id.*).

**D. Attorneys' Fees and Expenses**

Any award of attorneys' fees, costs, and expenses will be paid solely from the Cash Settlement Fund. (Doc. No. 158-3 at 35-36 ¶ VIII (1)). According to the Settlement Agreement, Defendant will take no position as to Class Counsel's application for attorneys' fees, costs, and expenses so long as the amount, combined with any award to the class representative, does not exceed the amount in the Cash Settlement Fund. (Doc. No. 158-3 at 36 ¶ VIII (2)). Defendants will bear their own attorneys' fees, expenses, and costs. (*Id.* at 36 ¶ VIII (6)). As discussed *infra*, Class Counsel seeks award of attorneys' fees in the amount of $442,624.00 and reimbursement of litigation expenses in the amount of $33,009.53. (Doc. No. 188).

**E. Class Representative Service Award**

Class counsel is entitled to seek a service award for Imber, the class representative, to be paid from the Cash Settlement Fund. (Doc. No. 158-3 at 35-36 ¶ VIII (1)). Pursuant to the Settlement Agreement, Defendant will take no position on the service award if it does not exceed $5,000.00. (*Id.* at 36 ¶ VIII (2)). In the Order granting preliminary approval of the class action settlement, the Court appointed Brandon Imber as the Class Representative. (Doc. No. 177 at 28). As discussed *infra*, Imber seeks a service award of $5,000.00. (Doc. No. 179).

**F. Settlement Administrator Costs**

In the Order granting preliminary approval of the class action settlement, the Court appointed Analytics Consulting LLC as Settlement Administrator. (Doc. No. 177 at 28). Pursuant to the Settlement Agreement, the costs and expenses incurred by the Settlement Administrator will be paid from the Cash Settlement Fund. (Doc. No. 158-3 at 24 ¶ V(A)(1)). Here, Class Counsel requests authorization to pay Analytics Consulting LLC up to $5,449.00 out

9

1    of the Cash Settlement Fund, which is the same amount estimated in the competitive bidding

2    process prior to their appointment as Settlement Administrator.  (Doc. No. 188-1 at 37; Doc. No.

3    171-4 at 2).

4                                      **APPLICABLE LAW**

5             "Courts reviewing class action settlements must ensure[] that unnamed class members are

6    protected from unjust or unfair settlements affecting their rights, while also accounting for the

7    strong judicial policy that favors settlements, particularly where complex class action litigation is

8    concerned."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quotations and

9    citations omitted).  Where parties reach a settlement agreement prior to class certification, "courts

10   must peruse the proposed compromise to ratify both the propriety of the certification and the

11   fairness of the settlement."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

12            The Court first determines whether, in its discretion, a class action may be certified.  *Id.;*

13   *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012).  Exercise of this

14   discretion "demand[s] undiluted, even heightened, attention in the settlement context."  *Amchem*

15   *Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  This level of attention "is of vital importance,

16   for a court asked to certify a settlement class will lack the opportunity, present when a case is

17   litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*

18            To obtain class certification, the plaintiff must affirmatively demonstrate that the class

19   meets the requirements of Rule 23.  *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 350 (2011).  The

20   plaintiff must satisfy the four prerequisites identified in Rule 23(a), as well as one of the three

21   subdivisions of Rule 23(b).  *Amchem Prods., Inc.,* 521 U.S. at 614.  "The four requirements of

22   Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy

23   of representation' (or just 'adequacy'), respectively."  *United Steel, Paper & Forestry, Rubber,*

24   *Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.,* 593

25   F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(3) is appropriate where common

26   questions of law or fact predominate and class resolution is superior to other available methods.

27   Fed. R. Civ. P. 23(b)(3).

28            Second, after determining that a class may be certified, the district court carefully

                                              10

considers "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted); *see* Fed. R. Civ. P. 23(e)(2). Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative." *Id.* at 1026; *see Campbell*, 951 F.3d at 1122. Although the court's role in reviewing a proposed settlement is critical, it is also a limited one. The court does not have the ability to "'delete, modify, or substitute certain provisions.' The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (citation omitted).

When evaluating fairness, adequacy, and reasonableness of a class action settlement at the final approval stage, the Court considers a number of factors, often referred to as either the *Hanlon* or *Churchill* factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Kim v. Allison*, 8 F.4th 1178 (9th Cir. 2021). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

## ANALYSIS

### A. Final Certification of Class Action

At the preliminary approval stage, the Court analyzed the Rule 23(a) and Rule 23(b)(1)(A) and (B) factors and concluded Plaintiff had satisfied each. The record on final approval reflects the same or substantially similar information as already provided and analyzed at the preliminary approval stage. As noted by Plaintiff, the only new information is Defendants' data confirming

the total participant class members is 175 persons (plus beneficiaries).  (Doc. No. 186-1 at 16).

No additional substantive issues regarding the certification have been raised.  Thus, the Court

sees no reason to change its analysis regarding the appropriateness of certification of the class for

settlement purposes and finds Plaintiff has met all requirements under Rules 23(a) and 23(b)(1).

The Court finds final certification is appropriate.  The following class is therefore certified as set

forth in the Settlement Agreement:

> All participants in the ESOP from December 31, 2018, or any time
> thereafter until December 31, 2024 (unless the participant terminated
> without vesting) and those participants' beneficiaries other than the
> Excluded Persons.
>
> "Excluded Persons" means the following persons who are excluded
> from the Class: (a) Defendants; (b) any fiduciary of the Plan; (c) the
> officers and directors of Ritchie Trucking or of any entity in which
> the individual Defendants have a controlling interest; (d) immediate
> family members of any of the foregoing excluded persons; and (e)
> the legal representatives, successors, and assigns of any such
> excluded persons.

(Doc. No. 158-3 at 7 ¶ I(H), (W)).  In addition, Plaintiff Brandon Imber is confirmed as Class

Representative; R. Joseph Barton is confirmed as Class Counsel; and Analytics Consulting LLC

is confirmed as Settlement Administrator.

## B.  Final Approval of Class Action Settlement

Class actions require the approval of the court prior to settlement.  Fed. R. Civ. P. 23(e)

("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or

compromised only with court's approval.").  This requires that: (i) notice be sent to all class

members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable,

and adequate; (iii) the parties seeking approval file a statement identifying the settlement

agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)-

(5).  The Settlement Agreement was previously filed on the court docket.  (Doc. No. 158-3).  The

Court now considers the adequacy of notice and review of the settlement following the final

fairness hearing.

### 1.  Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable

1    manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

2    Rule 23(c)(2)(A) requires that the Court "may direct appropriate notice to the class." Fed. R. Civ.

3    P. 23(c)(2)(A). The Court previously found the form of notice sufficient. (*See* Doc. No. 177 at

4    26-27; Doc. No. 178). Following approval of the notice, Defendant produced class data on

5    September 29, 2025, which identified 175 participant class members, and after cross-referencing

6    the class data with the United States Postal Service National Change of Address database, the

7    Settlement Administrator mailed the approved notice (*See* Doc. No. 178) to the identified class

8    members on October 17, 2025. (Doc. No. 186-2 at 2, ¶ 5; Doc. No. 184-1 at 2, ¶ 5-7). After

9    performing skip tracing on 12 undeliverable notices, only one notice has been undeliverable.

10   (Doc. No. 184-1 at 3, ¶ 8-10). The Settlement Administrator also created a website,

11   www.ritchieesopsettlement.com and maintained a toll-free number as resources for class

12   members seeking information about the Settlement. (*Id*. at 3, ¶ 12-13). The Settlement

13   Administrator received no objections to the settlement. (*Id*. at ¶ 11; Doc. No. 186-2 at 3, ¶ 8).

14   Pursuant to the order granting preliminary approval of the Settlement, Class Counsel also filed a

15   "Notice of no class member objections" confirming they received no objections to the Settlement,

16   the request for attorney fees, or the request for service award. (Doc. No. 196).

17        Finally, under the Class Action Fairness Act ("CAFA"), within 10 days after a proposed

18   settlement of a class action is filed in court, the settling defendant is required to serve certain state

19   and federal officials with a settlement notice. 28 U.S.C. § 1715(b). The Court is satisfied with

20   the notification provision set forth in the settlement agreement. (Doc. No. 158-3, ¶ XIII). Class

21   Counsel attests that Defendants provided a copy of the notices submitted to government officials

22   pursuant to CAFA on June 2, 2025. (Doc. No. 186-2 at 2, ¶ 3). Defense and Class Counsel

23   confirmed at the hearing that no state or federal officials have responded to the CAFA Notice at

24   the final hearing.

25        The Court accepts the report of the Settlement Administrator, and finds adequate notice

26   was provided to settlement class members. Rule 23(e)(1); *Churchill Vill., L.L.C. v. Gen. Elec.*,

27   361 F.3d 566, 575 (9th Cir. 2004).

28        ////

1

### 2.    Fairness, Adequacy, and Reasonableness of the Settlement

2          Class actions require the approval of the court prior to settlement and a finding that the

3    class settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  When the settlement

4    takes place before formal class certification, as it has here, the settlement requires a "higher

5    standard of fairness."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)

6    (quoting *Hanlon*, 150 F.3d at 1026).  This "more exacting review" of pre-certification class

7    settlements is required to ensure that the class representatives and their counsel do not receive a

8    disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to

9    represent."  *Lane*, 696 F.3d at 819; *see Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).  At

10   the final approval stage, a "court must show it has explored comprehensively" the eight factors

11   identified above, "and must give a reasoned response to all non-frivolous objections." *Allen*, 787

12   F.3d at 1223-24 (quoting *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012).  The Court

13   turns to these matters.

14                 ###    a.    Strength of Plaintiff's Case

15          When assessing the strength of a plaintiff's case, the court does not reach "any ultimate

16   conclusions regarding the contested issues of fact and law that underlie the merits of the [the]

17   litigation."  *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 720 F. Supp. 1379, 1388 (D. Ariz.

18   1989) (the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation

19   and the impact of those considerations on the parties' decisions to reach these agreements."); *see*

20   *also Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688

21   F.2d 615, 625 (9th Cir. 1982).  Here, while still maintaining his case is strong, Plaintiff

22   acknowledges that a decision on summary judgment and/or trial "would have involved a battle of

23   the experts on business valuation issues related to the amount of monetary relief, and the

24   outcomes of such disputes are by nature difficult to predict."  (Doc. No. 186-1 at 18).  Moreover,

25   even were Plaintiff to prove procedural violations in the valuation, it may not result in a finding

26   of breach of fiduciary duty, and/or or that any breach resulted in harm or loss to participants.

27   (*Id*.).

28          The Court finds that consideration of this factor thus weighs in favor of approval of the

1  settlement.

2  **b.  Risk, Expense, Complexity, Likely Duration of Further Litigation**

3  In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly

4  where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101

5  (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a general

6  matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to

7  lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v.*

8  *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Thus, in analyzing this factor, a court

9  should compare the uncertainties of prolonged litigation with the immediate benefits that the

10  settlement provides to the settlement class.  *Id.*

11  As noted in the order granting preliminary approval of the class settlement, the proposed

12  class would face "significant" litigation risk including Defendants' argument that the class should

13  not be certified, as well as risks on summary judgment, trial, and appeal.  (Doc. No. 177 at 22).

14  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are

15  preferable to lengthy and expensive litigation with uncertain results.  This is especially true here

16  given that 'ERISA actions are notoriously complex cases, and ESOP cases are often cited as the

17  most complex of ERISA cases." *Foster v. Adams and Assoc.*, 2021 WL 4924849, at *6 (N.D.

18  Cal. Oct. 21, 2021) (internal citations omitted).  As noted by Plaintiff, "[l]itigating to judgment

19  would have been time consuming as ERISA class actions sometimes extend for a decade or

20  more."  (Doc. No. 186-1 at 20 (collecting cases).  With this settlement, class members are ensured

21  a definitive recovery, as opposed to prolonged litigation and uncertain recovery.

22  Accordingly, the Court finds the potential costs, risks, and delay associated with class

23  certification, motion practice, trial, and appeal weigh in favor of approval of the settlement.

24  **c.  Amount Offered in Settlement**

25  To evaluate the fairness of a settlement award, the court should "compare the terms of the

26  compromise with the likely rewards of litigation." *Protective Comm. For Indep. Stockholders of*

27  *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see In re Mego Fin. Corp.*

28  *Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  When considering this factor, "[i]t is the complete

15

package taken as a while, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628.

Here the amount offered in settlement is composed of monetary and non-monetary recovery. First, $485,000.00 will be paid into a Cash Settlement Fund. (Doc. No. 186-1 at 21; Doc. No. 158-3 at ¶ IV.A). As indicated in the Settlement Agreement, this amount plus the expected amount to be paid to the Independent Fiduciary ($15,000.00) exhausts the amount of Defendants' insurance policy limits. (Doc. No. 186-1 at 21; Doc. No. 158-3 at ¶ N). Plaintiff correctly notes that (1) as the claims for monetary relief are all alleged against individuals, "the insurance was the most likely and readily available source of cash available for any recovery"; (2) "a monetary judgment against Ritchie [Trucking] makes no economic sense as the ESOP owns 100% of Ritchie so that a payment by Ritchie would reduce the stock value by the amount paid by Ritchie"; and (3) the most likely remedy regarding claims against non-fiduciary Defendants would be a modification of the loan, which, as indicated below, is "precisely the remedy obtained." (Doc. No. 186-1 at 21).

Second, the principal balance of the ESOP-related debt will be reduced by $1.4 million. (Doc. No. 186-1 at 22-24; Doc. No. 158-3 at ¶ IV, "Loan Modification"). As a result, 115,000 shares of Employer Stock held in ESOP Suspense Account will be released and allocated to the ESOP accounts of class members. (*Id.*). Class Counsel attests that the Loan Modification will immediately increase the shares allocated to the ESOP by 46%, and the "immediate impact" of the $1.4 million debt reduction would increase the allocation shares from $400,605.00 to $827,108.00. (Doc. No. 177 at 21; Doc. No. 186-1 at 22).

As detailed in the order granting preliminary approval of the class action settlement, Plaintiff's expert assessed the valuation of the 2018 Transaction at issue likely overvalued Ritchie Trucking between $6.2 and $9 million. (Doc. No. 158-2 at 2 ¶ 4). Plaintiff argues the total gross value of the Settlement is $2.02 million, which represents between 22.4% and 32.5% of the maximum amount that could have been recovered for the class if Plaintiff prevailed, and results in a benefit of approximately $11,542.85 per participant class member. (Doc. No. 186-1 at 22-23; Doc. No. 186-2 at 3, ¶ 7). Alternatively, Plaintiff contends that even if the Settlement remained

16

1  valued at the estimated gross settlement amount of $1.885 million, as indicated in the preliminary

2  request for approval of the Settlement, it represents between 21% to 30% of the maximum

3  amount that could have been recovered if Plaintiff prevailed, resulting in a benefit of

4  approximately $10,771.00 per participant class member.  (Doc. No. 186-1 at 22-23).

5          Defendants also engaged an Independent Fiduciary to review the Settlement in accordance

6  with Prohibited Transaction Exemption ("PTE") 2003-39 and filed a supplemental notice of the

7  Independent Fiduciary Report calculating the value of settlement at $1,815,000 which is less than

8  the gross settlement value estimated by Plaintiff.  (*See* Doc. No. 192-1, Exh. A).  Regardless, the

9  difference of opinion about the settlement value did not impact the Independent Fiduciary's

10  conclusion that the settlement amount and other terms of settlement, including the request for

11  attorneys' fees, are reasonable.  (*See* Doc. No. 192-1 at 20).  Accordingly, the Independent

12  Fiduciary authorized the Settlement in accordance with PTE 2003-39 and gave "a release in its

13  capacity as a fiduciary of the Plan, for and on behalf of the Plan."  (*Id*. at 22).

14          Whether on a percentage basis or per participant recovery basis, the gross settlement

15  amount estimated between $1.885 million and $2.02 million appears consistent with the recovery

16  in other ERISA class action settlements in this Circuit.  (See Doc. No. 177 at 23-24 (citing, e.g.,

17  *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 459 (affirming approval of ERISA settlement

18  representing 16% recovery), *Gamino v. KPC Healthcare Holdings, Inc*., 2023 WL 3325190, at

19  *2, 4 (C.D. Cal. Mar. 11, 2023) (finding 7% of the estimated losses "compares favorably to other

20  approved ERISA settlements" and approving settlement that would provide an average of

21  $2,900.00 per participant); *Hurtado v. Rainbow Disposal Co., Inc*., 2021 WL 2327858, at *4

22  (C.D. Cal. Sept. 18, 2020) (ERISA settlement of approximately 29% of claimed damages was "an

23  exceptional result for the Class" and an average benefit of $11,969.00 per participant was

24  significant).  When weighed against the litigation risks identified above, the Court finds the total

25  amount of recovery is significant.  The Independent Fiduciary's approval provides further support

26  for finding the amount offered in settlement is fair.  (*See* Doc. No. 192).  Given these

27  considerations, the Court finds the total estimated gross settlement amount estimated between

28  $1.885 million and $2.02 million is fair, reasonable, and adequate.

Consequently, the Court finds this factor weighs in favor of approving the settlement.

### d. Extent of Discovery and Stage of the Proceedings

A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop*., 221 F.R.D. at 528.  However, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 459.  Here, as detailed in the order granting preliminary approval, Class Counsel details the discovery that was obtained pursuant to the Court's Order (Doc. No. 80), including the 2018 Transaction documents, reports/opinions valuing Ritchie stock during the 2018 Transaction and after, resolutions and minutes of the Board and ESOP fiduciaries, the written instrument of the ESOP, and insurance agreements that allowed Plaintiff's counsel to assess the amount of available insurance.  (Doc No. 177 at 20 (citing Doc. No. 158-1 at 16; Doc. No. 158-2 at 2 ¶ 2)).  Plaintiff also issued nine interrogatories, and the parties exchanged Rule 26(a) disclosures.  (Doc. No. 158-2 at 2 ¶ 3).  Based on this information, expert reports analyzing the documents, Defendants' Answers, Defendants' motions to dismiss, and Defendants' mediation reports, Plaintiff's counsel affirmed that he was able to make an informed decision about the strengths and weaknesses of the case.  (Doc. No. 158-1 at 16; Doc. No. 158-2 at ¶ 5, 6).  After receiving this information, the Parties engaged in lengthy negotiations over the span of two years, including three mediation sessions with two different mediators. (Doc. No. 158-2 at 2-3, ¶ 6-10).

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case.  Hence, this factor weighs in favor of approval of the settlement.

### e. Experience and Views of Counsel

"Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination '[g]reat weight,' because counsel 'are most closely acquainted with the facts of the underlying litigation.'" *Gamino*, 2023 WL 3325190, at *4 (citing *Nat'l Rural Telecomm. Coop*., 221 F.R.D. at 528).  Here, Class Counsel has significant experience litigating employee

1   benefits class actions, including numerous ERISA class actions, both generally and specifically

2   challenging ESOP transactions (*See* Doc. No. 156-2 at 2-4) (listing ERISA cases, including those

3   involving ESOPs, where Plaintiff's counsel served as lead or co-counsel).  Class Counsel attests

4   that, based on his 24 years of experience litigating ERISA cases, he believes the Settlement is a

5   very good result for the Class.  (Doc. No. 186-2 at 3, ¶ 9).

6          Thus, the experience and views of Class Counsel weigh in favor of final approval of the

7   settlement.

### f.    Government Section

9          As no government entity has participated in this matter, this factor is neutral.

### g.    Reaction of the Class to the Proposed Settlement

11          "[T]he absence of a large number of objections to a proposed class action settlement raises

12   a strong presumption that the terms of a proposed class settlement action are favorable to the class

13   members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29.  Here, there are no objections

14   or disputes with the settlement.  (Doc. No. 184-3 at 3, ¶ 11; Doc. No. 186-2 at 3, ¶ 8; Doc. No.

15   196).  No objectors appeared at the final fairness hearing held on December 19, 2025, and class

16   counsel confirmed that no additional objections were received between filing the motion for final

17   approval and the final fairness hearing.  The lack of objections weighs in favor of final approval

18   of the settlement.

### 3.    Independent Fiduciary Report

20          As required by Section XII of the Settlement Agreement, the Independent Fiduciary found

21   in its report dated December 8, 2025 that the Settlement is consistent with Prohibited Transaction

22   Exemption 2003-39, has approved the release of the Settled Class Claims (including as the claims

23   released by Section XIV.4 of the Settlement Agreement) and that it approves and authorizes the

24   Settlement on behalf of the Plan in accordance with the Prohibited Transaction Exemption 2003-

25   39.  (*See* Doc. No. 158-3; Doc. No. 192).  As required by Section XIV.3 of the Settlement

26   Agreement, the Independent Fiduciary, in its report, has issued a release of the Settled Class

27   Claims on behalf of the Plan (which release includes a Waiver of California Civil Code Section

28   1542 similar to Section XIV.4 of the Settlement Agreement), but the release approved by the

1    Independent Fiduciary does not release claims by any person who is not a member of the Class,

2    including claims with respect to any alleged loss such person may have suffered to his or her Plan

3    account.

4        The approval by the Independent Fiduciary additionally weighs in favor of final approval

5    of the settlement.

6                        **4. Conclusion**

7        Finally, the Court briefly addresses Defendants' request at the hearing to add "the Plan" to

8    the release language in its order, to wit, directing that "the Parties, the Class and the Plan are

9    barred and enjoined from prosecuting any and all Settled Claims as provided in the Settlement

10   Agreement (including claims released by the Independent Fiduciary as to those claims allowed to

11   be released in Section XIV.3 of the Settlement Agreement) against any Party with respect to

12   whom they have released claims." (*See* Doc. No. 201). Pursuant to the Settlement Agreement,

13   (1) Defendants agreed not to oppose the Final Approval Motion "if consistent with the terms of

14   this Settlement Agreement," and (2) the "Final Approval Motion will seek entry of a proposed

15   Final Order in a form to be agreed-upon by the Settling Parties." (Doc. No. 158-3 at 39-40, ¶

16   X(2)). Defendants did not offer cogent argument as to why the insertion of "the Plan" is

17   necessary to maintain consistency with the terms of the Settlement Agreement, nor is the Court

18   inclined to interpret the previously agreed upon terms of the Settlement Agreement at this stage of

19   proceedings.

20       After consideration of the *Churchill* factors, the Court finds the settlement is fair,

21   reasonable, and adequate under Rule 23(e), and grants final approval of the settlement. [4]

22   _____

23   [4] The Ninth Circuit has held that "[t]he amended Rule 23(e) did not "displace" this court's previous
     articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in

24   their holistic assessment of settlement fairness." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th
     Cir. 2021) (citing Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment). That said, while

25   largely repetitive of the Court's findings above and in the preliminary approval of the class action
     settlement (Doc. No. 177), in an abundance of caution, the Court finds the amended 23(e) factors also

26   support approval of the settlement as follows: (1) the Class is adequately represented by Class Counsel and
     the class representative; (2) the settlement agreement was preceded by extensive, arms-length negotiations

27   of by experienced counsel in ERISA and ESOP actions; (3) as discussed *supra*, the relief for the class is
     adequate taking into account taking into account the costs, risks, and delay of trial and appeal, the

28

                                    20

**C. Attorneys' Fees, Expenses, and Service Award**

In Plaintiff's unopposed Motions, and consistent with the terms of the Settlement Agreement (Doc. No. 158-3 at ¶ VIII), Class Counsel seeks approval of $442,624.00 in attorneys' fees, which is equivalent to 21.9% based on a total estimated settlement value of $2.02 million, or 23.5% based on a total estimated settlement value of $1.885 million.  (Doc. No. 188).  The attorneys' fees will be paid out of the Cash Settlement Fund.  (Doc. No. 158-3 at ¶ VIII (1)).  Class Counsel also seeks 33,009.53 in expenses, $5,449.00 in settlement administration costs, and a $5,000.00 service award for Brandon Imber, the named Plaintiff and class representative.  (Doc. No. 179).

**1.  Attorneys' Fees**

**a.  The *Bluetooth* Factors**

As held by the Ninth Circuit, "Rule 23(e)(2), as revised in 2018, requires courts 'to go beyond our precedent' by accounting for the terms of any proposed award of attorney's fees when determining whether the relief provided for the class is adequate." *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 WL 4893394, at *5 (N.D. Cal. Oct. 20, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023-36 (9th Cir. 2021); *Kim*, 8 F.4th at 1179).  Particularly in pre-certification settlements, the district "is required to search for 'subtle signs' that plaintiff's counsel has subordinated class relief to self-interest." *Kim*, 8 F.4th at 1179 (quoting *In re Bluetooth*, 654 F.3d at 947); *see also Briseño*, 998 F.3d at 1024-25.  Possible signs of shortchanging the class include: (1) class counsel's receipt of a disproportionate distribution of the settlement or a handsome fee and minimal monetary class recovery, (2) a "clear sailing" provision under which defendant agrees not to object to the attorneys' fees sought or payment of fees are made separate from class funds, and (3) an agreement that fees not awarded will revert to the defendant, not to the class fund.  *Kim*, 8 F.4th at 1180; *In re Bluetooth*, 654 F.3d at 947.

---

effectiveness of the proposed distribution per the terms in the Settlement Agreement, and the terms of the award of attorney fees, and there are no longer any other agreements to be identified under FRCP 23(e)(3); and (4) the settlement treats the class members equitably relative to each other, as only differences relate to legitimate distinctions under the terms of the Plan itself.  (*See* Doc. No. 186-1 at 26-32).

Here, after considering the *Bluetooth* factors in the order granting preliminary approval of the settlement, the Court noted the only possible concern about the clear sailing provision in the Settlement Agreement (Doc. No. 158-3 at 36 ¶ VIII(2)) was alleviated because Plaintiff was able to make a fully informed decision about the merits and risks in pursuing the class action over years of litigation and negotiation; and the estimated attorneys' fees of $471,000.00, equating to 25% of the settlement fund, appeared to be within the acceptable range.  (Doc. No. 177 at 24-25).  The Court nonetheless reserved ruling until the instant motion was filed so the Court could fully evaluate the reasonableness of the request.  (*Id*.).

### b.  Reasonableness of Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  Where, as here, "a settlement produces a common fund for the benefit of the entire class," the Court has discretion to employ either the lodestar method or the percentage-of-recovery method.  *Id*. at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.  Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").  Regardless of the chosen calculation method, reasonableness of the fee is the touchstone.  (*Id*.).

When evaluating the reasonableness of a percentage-based attorney's fees award, district courts consider:

> (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. Additionally, district courts may cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and risk multiplier.

*Chavez v. Converse, Inc.*, 2020 WL 10575028, at *5 (N.D. Cal. Nov. 25, 2020) (citations and internal quotation marks omitted).  Here, Class Counsel seeks an award between 21.9% and

1    23.5% of the common fund.  (Doc. No. 188).

2         As to the first factor, "[t]he overall result and benefit to the class from the litigation is the
3    most critical factor in granting a fee award."  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,
4    1046 (N.D. Cal. 2007).  As discussed in detail *supra*, the Court finds the overall result achieved
5    for the class is significant.  Class Counsel secured a total settlement estimated between $1.885
6    million and $2.02 million for the benefit of the class, which equates to an average net payment of
7    $10,771.00 or $11,542.85 per participant.  (Doc. No. 188-1 at 20).  As noted by Plaintiff, "an
8    average gross recovery of more than $11,000.00 per class member" is "significantly higher than
9    that approved in many other ERISA class actions."  (Doc. No. 188-1 at 19 (citing *New England
10   Biolabs, Inc. v. Miller*, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022)); *see also Hurtado*,
11   2021 WL 2327858, at *4 (average benefit of $11,969.00 per participant was significant benefit);
12   *Gamino*, 2023 WL 3325190, at *3-4 (approving ESOP settlement with average benefit per
13   participant of $2,900); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *2 (C.D.
14   Cal. Sept. 18, 2020) (describing settlement amounting to $77.34 average gross recovery as
15   "exceptional").  The Settlement additionally secures non-monetary benefits to the class by
16   requiring the Settlement funds to be paid through the Plan, which preserves tax-favored treatment
17   of the participants' Settlement proceeds, requiring Defendants to bear the expenses of the
18   Settlement and distribution, and requiring the requisite Defendants to provide Class Counsel with
19   valuation reports.  (Doc. No. 188-1 at 17-18 (citing *Hurtado*, 2021 WL 2327858, at *4 (approving
20   ESOP settlement with similar benefits to class members)).  These favorable results support the
21   reasonableness of Class Counsel's request.

22        As to the second factor, "[t]he risk that further litigation might result in Plaintiffs not
23   recovering at all, particularly in a case involving complicated legal issues, is a significant factor in
24   the recovery of fees."  *In re Omnivision*, 559 F. Supp. 2d. at 1046-47; *see also Vizcaino*, 290 F.3d
25   at 1048.  As discussed above, the proposed class would face significant litigation risk including
26   Defendant's argument that the class should not be certified, as well as risks on summary
27   judgment, defense verdicts in complex ERISA fiduciary breach actions at trial, and reversal of
28   trial decisions for the class by the Ninth Circuit on appeal.  (*See* Doc. No. 177 at 22 (citing

*Foster*, 2021 WL 4924849, at *6 ("ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases."); Doc. No. 188-1 at 21-22).

As to the third factor, the Court considers the skill required to litigate the action, and Class Counsel's overall performance. *See In re Omnivision*, 559 F. Supp. 2d. at 1047. As noted by Plaintiff, the complexity of ERISA actions requires counsel with "specialized skills" and expertise regarding industry practices to effectively litigate ESOP class actions. (Doc. No. 188-1 at 22 (citing, e.g., *Karpik v. Huntington Bancshares Inc*., 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021)). Here, Class Counsel has extensive experience litigating ERISA class actions, including those involving ESOP transactions (Doc. No. 156-2 at 3-4, ¶ 4-7); and, as discussed above, Class Counsel obtained a significant recovery for the class despite considerable litigation risks. Their familiarity with the issues, as presented in other cases, was likely valuable to the class during negotiation and finalizing a complex settlement. (*Id.*; Doc. No. 188-1 at 22-23).

As to the fourth factor, the Court considers the contingent nature of the fee and the financial burden carried by the Plaintiff. Here, the fee was contingent, and as Class Counsel points out, they were "well-aware" based on their previous experience in ESOP litigation, that this case "would likely require hundreds or thousands of hours and expenses could amount to several hundreds of thousands of dollars," with significant risk that their time and expenses would not be recouped. (Doc. No. 188-1 at 23-24). To date, Class Counsel has expended over 900 hours prosecuting this case and has advanced litigation expenses more than $30,000.00 without compensation for any efforts in this case. (Doc. No. 188-2 at 5, 9-10, ¶ 11-12, 22-24).

As to fifth factor, Plaintiff cites other ERISA class actions brought by Class Counsel, as well as other ERISA class actions in the Ninth Circuit, wherein courts awarded "significantly more" than the 25% benchmark for a reasonable fee award, and certainly more than the 21.9% to 23.5% requested here. (Doc. No. 188-1 at 24-25); *see Foster v. Adams and Assoc., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) (awarding one-third of $3-million-dollar settlement in ESOP case); *Hurtado*, 2021 WL 2327858, at *4 (awarding 30% of $7.9 million dollar settlement in ESOP case); *Gamino*, 2023 WL 3325190, at *5 (awarding 30% of $9 million dollar settlement in ESOP case).

Given consideration of these factors, and subject to lodestar cross-check, the requested award of 21.9% to 23.5% of the settlement fund in attorneys' fees in the amount of $442,624.00 is reasonable. *See Briseño*, 998 F.3d at 1024 (in both pre- and post-certification settlements, court must "examine whether the attorneys' fees arrangement shortchanges the class"); *In re Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941. First, "[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable experience, skill, and reputation." *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. V. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

In support of Plaintiff's Motion for Attorneys' Fees, Class Counsel submits declarations from Court-appointed lead counsel R. Joseph Barton attesting that rates for professional services at his former firm of Block & Leviton in 2021 and 2022 fell between $275.00 and $950.00 per hour, and rates for professional services at The Barton Firm from 2023 and 2025 fell between $280.00 and $995.00. (Doc. No. 188-2 at 5-6, ¶ 11-12). In particular, Mr. Barton's current hourly rate is $995.00 per hour, his former partner's most recent 2024 rate when last working on this case was $655.00 per hour, the former and current associate attorneys' most recent rate is $400.00 to $650.00, and the paralegal's current hourly rate is $285.00 per hour. (*Id*. (also attesting to historical rates for each legal professional that expended hours on this case from 2021 to 2024). Class Counsel also submits a declaration from Daniel Feinberg, an attorney with extensive experience in nation-wide ERISA litigation of ESOP claims, attesting that (1) they are not aware of attorneys in this District who have experience handling complex ERISA class action

25

or ESOP litigation, and (2) the current hourly rates for professional services by Mr. Barton, his former partner, his associate attorneys, and his paralegal are well within the range of market rates charged by attorneys with similar experience, skill and expertise for comparable litigation, and lower than the rates charged at the attorneys at their firm handling this type of litigation.  (Doc. No. 188-5, 10-11, ¶ 15-17).

Class Counsel argues these rates are reasonable because they are consistent with the prevailing market rate for complex ERISA and ESOP class action litigation, which, according to Counsel, should be the nationwide market rate rather than the Eastern District of California region particularly in light of Class Counsel's extensive litigation experience in these types of cases and the lack of experienced attorneys handling these cases in this District.  (Doc. No. 188-1 at 27-29). Class counsel also refers the Court to cases where the district court found the relevant hourly rate in this type of litigation is the nationwide market, and cases approving fees within or just below the range requested by Class Counsel.  (*Id.*; Doc. No. 188-2 at 8, ¶ 18); *see Foster*, 2022 WL 425559, at *10 (finding rates for Mr. Barton, the associate attorney, and his paralegal to be reasonable in ERISA class action); *Hurtado*, 2021 WL 2327858, at *4 (finding rates for Mr. Barton, the associate attorney, and his paralegal to be reasonable in ERISA class action); *Gamino*, 2023 WL 3325190, at *6 (noting "[i]n complex ERISA cases, the relevant hourly rate is the nationwide market," and finding 2023 rates for Mr. Barton, the associate attorney, and his paralegal to be reasonable in ERISA case).  The Court is satisfied that Class Counsels rates are reasonable in light of the complexity of ERISA and ESOP class actions.

The Court also considers the hours spent on this case.  At final approval, appointed Class Counsel Mr. Barton represents he spent 416.8 hours on the case, his former partner Mr. Downes spent 64.90 hours on the case as a partner and 69.10 as an associate, associate attorney Ms. Baroutjian spent 128.5 hours on the case, associate attorney Mr. Cheng spent 143.50 hours on the case, and paralegal Ms. Siegel spent 90.5 hours on the case.  (Doc. No. 188-1 at 12; Doc. No. 188-2 at 5-6, ¶ 11-12).  Class Counsel represents he delegated tasks to more junior attorneys "as evidenced by timekeepers with lower billing rates accounting for over 55% of the hours."  (Doc. No. 188-1 at 31; Doc. No. 188-2 at 7, ¶ 15).  The Court finds the hours each attorney and the

paralegal spent on this case over the course of three and a half years of litigation including investigating the claims, drafting the original Complaint, drafting oppositions to multiple motions to dismiss, negotiating settlement, and drafting the motion for preliminary and final approval of the Settlement, are reasonable.

Class Counsel's total lodestar at current rates is $661,617.00,[5] and the total lodestar at historical rates is $653,417.00. (Doc. No. 188-1 at 14). Moreover, as noted by Class Counsel, even were the Court to reduce rates to those more recently analyzed as reasonable in this district in an ERISA case for the purposes of the lodestar cross-check, allowing for rates of $200.00 to $750.00 (after calculating inflation), the total lodestar would be $518,820.00. (Doc. No. 188-1 at 29-30). Thus, regardless of calculation on Class Counsel's current or historical hourly rate, or hourly rates more routinely charged in these types of action in the Eastern District of California, this cross-check confirms the reasonableness of an award between 21.9% to 23.5%, or $442,624.00 fee award found above.

After considering the factors evaluating the reasonableness of a percentage-based attorney's fees award, and the lodestar crosscheck, the Court will award attorneys' fees in the amount of $442,624.00.

**D. Litigation Expenses**

Class counsel in common fund cases are entitled to an award of "reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client." *Trustees of the Const. Indus. And Laborers Health and Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). Reimbursable expenses may include "(1) meals, hotels, and transportation; (2)

---

[5] The Court calculated the lodestar as follows. For lead Counsel Barton, who reports a total of 331.00 hours billed from 2023-2025, applying an hourly rate of $995.00, and a total of 85.80 billed in 2021 and 2022, applying an hourly rate of $950.00, his portion of the total lodestar is $410,855.00. For Attorney Baroutjian, who reports a total of 128.50 hours billed, applying an hourly rate of $400.00, her portion of the total lodestar is $51,400.00. For Attorney Downes, who reports a total of 69.10 hours billed as an associate in 2021 and 2022 at an hourly rate of $550.00, and a total of 64.90 hours as a partner in 2023 and 2024 at an hourly rate of $655.00, his portion of the total lodestar is $80,514.50. For Attorney Cheng, who reports a total of $143.50 in 2021 and 2022 at an hourly rate of $650.00, his portion of the total lodestar amount is $93,275.00. And for paralegal Siegel, who reports a total of 44 hours in 2021 and 2022 at an hourly rate of $280.00, and a total of 46.50 hours from 2023-2025 at an hourly rate of $285.00, her portion of the lodestar is $25,572.50.

1   photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight

2   delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and

3   investigators; and (9) mediation fees." *Castro v. Paragon Industries, Inc.*, 2021 WL 2042333, at

4   *12 (E.D. Cal. 2021) (quoting *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d at 1177.

5        Here, Class Counsel requests reimbursement of $33,009.53 in expenses, which is

6   comprised of court fees, postage and courier fees, printing costs, travel costs, and primarily,

7   expenses incurred for experts and mediation.  (Doc. No. 188-1 at 36; Doc. No. 188-2 at 9-10, ¶

8   23, 24).  The Court reviewed class counsel's declaration and finds all charges incurred to be

9   reasonable.  Therefore, the Court will approve the reimbursement of expenses in the amount of

10   $33,009.53, as requested.

11   **E.  Service Award to Plaintiff Imber**

12        As previously indicated, a service award is likely appropriate in this case.  (Doc. No. 177

13   at 25-26).  While discretionary, service awards are "fairly typical in class action cases."

14   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "'Incentive awards typically

15   range from $2,000.00 to $10,000.00,' and '[higher] awards are sometimes given in cases

16   involving much larger settlement amounts.'"  *Sanders v. LoanCare, LLC*, 2019 WL 12340195, at

17   *12 (C.D. Cal. Sept. 16, 2019) (quoting *Bellinghausen*, 306 F.R.D. at 266-67).  There is no

18   precise method for calculating the amount of an appropriate service award; such awards are

19   intended to compensate the plaintiff for work performed on behalf of the class and to make up for

20   financial or reputational risk.  *Roes, 1-2 v. SFBC Management, LLC*, 944 F.3d 1045, 1057-58 (9th

21   Cir. 2019).  However, the Ninth Circuit has cautioned that "district courts must be vigilant in

22   scrutinizing all incentive awards to determine whether they destroy the adequacy of the class

23   representatives."  *Radcliffe v. Experian Info. Solutions, Inc*., 715 F.3d 1157, 1164 (9th Cir. 2013).

24   In evaluating an incentive award, the district court considers "relevant factors including the

25   actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

26   benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the

27   litigation and reasonable fears of workplace retaliation."  *Staton*, 327 F.3d at 977 (internal

28   quotations and alterations omitted); *see also Kahnna v. Intercon Sec. Systems, Inc*., 2014 WL

1379861, at *10 (E.D. Cal. Apr. 8, 2014).  Courts in the Ninth Circuit have recognized that

$5,000.00 is a presumptively reasonable service award.  *See Harris v. Vector Marketing Corp*.,

2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012 (collecting cases)).

Class Representative and named Plaintiff Imber seeks a service award in the amount of

$5,000.00.  (Doc. No. 179).  Per the Settlement Agreement, the service award will be paid out of

the Cash Settlement Fund.  (Doc. No. 158-3 at 35-36, ¶ VIII (1)).  In support of this request,

Imber submitted a declaration attesting that over the course of almost four years spent on this

case, he took the initiative to contact an attorney about his concerns regarding the ESOP, decided

to pursue class action litigation on behalf of himself and his fellow employees, requested

documents for Class Counsel, reviewed the Complaint and authorized it's filing, participated in

mediation, consistently communicated about the progress of the case, reviewed court filings and

document production, and approved the significant terms in the Settlement Agreement before it

was executed.  (Doc. No. 179-1 at 10-11; Doc. No. 179-2 at 2-5, ¶ 3-19).  Imber also personally

appeared at the final hearing in this matter.  Imber attests that he took significant "reputational

risk" and personal loss of friendships after bringing this action against his former employer and

has been unable to procure employment at the same income level.  (Doc. No. 179-1 at 9-10; Doc.

No. 179-2 at 5, ¶ 20-22).  Finally, had Imber not been willing to participate in this action the class

members would not have received any benefit.  (Doc. No. 179-1 at 9-10).

Considering the circumstances of this case and Imber's involvement, the Court concludes

that the "presumptively reasonable" service award of $5,000.00 to Plaintiff Imber is fair and

reasonable.

## F. Settlement Administration Expenses

Class Counsel requests authorization to pay the appointed Settlement Administrator,

Analytics Consulting, LLC, fees in the amount of $5,449.00 per their bid submitted after

competitive bidding process.  (Doc. No. 188-1 at 37; Doc. No. 177 at 10).  As indicated in the

Settlement Agreement, the Settlement Administrator's fees will be paid out of the Cash

Settlement Fund.  (Doc. No. 158-3 at 35-36, ¶ VIII (1)).  Counsel contends the amount requested

is less than those paid to settlement administrators in other ESOP litigation.  (Doc. No. 188-1 at

37 (citing *Gamino*, 2023 WL 3325190, at *7 (authorizing payment of $13,000.00), *Hurtado*, 2021 WL 2327858, at *8 (authorizing payment of $11,500.00)).  Based on the information provided, the Court finds the settlement administration expenses are reasonable.  The Court authorizes Class Counsel to pay the Settlement Administrator, Analytics Consulting, LLC, settlement administration expenses in the amount pf $5,449.00, as requested.

Accordingly, it is **ORDERED**:

1. Plaintiff's unopposed motion for final approval of the class action settlement (Doc. No. 186) is GRANTED to the extent that the Court approves the settlement as fair, reasonable, and adequate;

2. Plaintiff's unopposed motion for attorney's fees, costs, and incentive award to Plaintiff (Doc. No. 188) is GRANTED to the extent the Court awards the following sums:

   a. Class Counsel shall receive $442,624.00 in attorneys' fees and $33,009.53 in expenses; and

   b. Analytics Consulting, LLC shall receive $5,449.00 in settlement administration costs and expenses.

3. Plaintiff's unopposed motion for service award (Doc. No. 179) is GRANTED to the extent that named Plaintiff and Class Representative Brandon Imber shall receive $5,000.00 as a service award;

4. The Parties are directed to effectuate all terms of the Settlement Agreement, including all deadlines and procedures for allocation and distribution to class members set forth therein. The Releases contained in the Settlement Agreement are expressly incorporated herein in all respects:

   a. The claims of Plaintiff and the Class with respect to Counts I-IV and VI-VIII are released as provided in the Settlement Agreement ¶ XIV(1) and ¶ XIV(4);

   b. The claims of Defendants against Plaintiff, the Class, Plaintiff's counsel and Class Counsel are released as provided in Settlement Agreement ¶ XIV(2) and XIV(4);

   c. The Parties and the Class are barred and enjoined from prosecuting any and all

30

settled claims as provide din the Settlement Agreement (including claims released by the Independent Fiduciary as to those claims allowed to be released in section XIV(3) of the Settlement Agreement) against any Party with respect to whom they have released claims.

    d.  Plaintiff's individual claim, Count V, including claims for attorneys' fees and costs related to Count V, are not released; and any claims to enforce the Settlement Agreement are not released.

5.  Counts I, II, III, IV, VI, VII, and VIII of this action are DISMISSED with prejudice in accordance with the terms of the Settlement Agreement. The Court retains jurisdiction over this action for purposes of enforcing the Settlement Agreement.

6.  Pursuant to Federal Rule of Civil Procedure 54(b), the Court determines there is no reason for delay to enter judgment on the Class Claims regardless of Plaintiff's still pending individual claim at Count V.  As such, the Clerk is directed to enter judgment as to Counts I, II, III, IV, VI, VII, and VIII, but not as to Count V.

Dated:   December 23, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE